# Exhibit 1

**Trade Agreement**

**THIS AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN.  ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN.  THE INFORMATION IN THIS AGREEMENT IS SUBJECT TO CHANGE.  THIS AGREEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## TRADE AGREEMENT

[●][1] (the "Company"), on the one hand, and the supplier identified in the signature block below ("Supplier") (the Company and the Supplier each, a "Party" and collectively, the "Parties") on the other hand, hereby enter into this agreement (as amended, supplemented, restated, or otherwise modified from time to time pursuant to the terms hereof, this "Agreement") dated as of the date in the Supplier's signature block below.

## Recitals

WHEREAS on August 6, 2025 (the "Petition Date"), the Company and certain of its direct and indirect subsidiaries and related entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

WHEREAS on [●], 2025, the Court entered the *Interim Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain (A) Critical Vendors, (B) Foreign Vendors, (C) 503(b)(9) Claimants, and (D) Lien Claimants, and (II) Granting Related Relief* (the "Interim Order") [Docket No. [●]] authorizing the Debtors on an interim basis, under certain conditions, to pay the prepetition claims of certain Trade Claimants, including Supplier, subject to the terms and conditions set forth therein.[2]

WHEREAS prior to the Petition Date, Supplier delivered goods to the Company and/or performed services for the Company, and the Company paid the Supplier for such goods and/or services, according to Customary Trade Terms (as defined herein).

WHEREAS the Interim Order permits the Debtors to condition payment on account of certain prepetition claims the Supplier may hold against the Debtors on execution of this Agreement.

WHEREAS the Parties agree to the following terms as a condition of payment of the Agreed Supplier Payment (as defined below) in full and final satisfaction of the Prepetition Supplier Claim (as defined below).

---

[1] To be vendor-facing Company entity (or entities).

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Interim Order.

RLF1 33522027v.1

**Agreement**

1. <u>Recitals</u>. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2. <u>Agreed Supplier Payment</u>. Supplier represents and agrees that, after due investigation, the sum of all amounts due and owing by the Company to Supplier as of the Petition Date is $[●] (the "<u>Prepetition Supplier Claim</u>"). Within 10 business days of execution of this Agreement, the Debtors shall pay the Supplier $[●] on account of, and in full and final satisfaction of, its Prepetition Supplier Claim (the "<u>Agreed Supplier Payment</u>") (without interest, penalties, or other charges). For the avoidance of doubt, any amounts that become due and owing by the Debtors to the Supplier for goods or services provided after the Petition Date shall continue to be due and owing and shall be paid in the ordinary course pursuant to the Parties' agreed-upon payment terms.

3. <u>Agreement to Supply</u>.

   a. Supplier shall supply goods to and/or perform services for the Company, and the Company shall accept and pay for goods and/or services from Supplier, for the Duration of the Debtors' Chapter 11 Cases[3] based on the following terms (collectively, the "<u>Customary Trade Terms</u>"): those trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, promotional credits, timing of payments and payment terms, allowances (as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable), product mix, availability, and other programs) in place in the 12 months prior to the Petition Date, or are otherwise acceptable to the Debtors in light of customary industry practices.

   b. The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Debtors except as agreed to in writing by the Parties (email being sufficient).

   c. The Supplier shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

   d. The Supplier shall continue all shipments of goods or performance of services in the ordinary course and shall fill orders for goods or services requested by the Debtors in the ordinary course of business pursuant to the Customary Trade Terms.

   e. The Supplier shall not be permitted to cancel any contract, agreement, or arrangement pursuant to which Supplier provides services to the Debtors for the Duration of the Debtors' Chapter 11 Cases.

---

[3] "Duration of the Debtors' Chapter 11 Cases" means until the earlier of: (i) the effective date of a chapter 11 plan in the Debtors' chapter 11 cases; (ii) the closing of a sale of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code, resulting in a cessation of the Debtors' business operations; (iii) the liquidation of the Debtors or conversion of the Debtor's chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; or (iv) a termination event occurs that results in the Debtors losing access to cash collateral.

4. <u>Other Matters</u>.

As long as the Agreed Supplier Payment is made in accordance with this Agreement, the Company does not exercise its rights in Section 5(a), and this Agreement is not terminated by either Party:

a. Supplier agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims Supplier may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. Supplier agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect.

b. Supplier will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Agreement or a plan confirmed in the Debtors' chapter 11 cases; *provided* that nothing in this Agreement shall prohibit Supplier from (a) filing a proof of claim with the Court or the Court-appointed claims agent or (b) filing with the Court, or otherwise seeking, a request for payment of an administrative expense claim.

c. During the Duration of the Debtors' Chapter 11 Cases, Supplier will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Supplier by the Company arising solely from prepetition agreements or transactions. If Supplier has taken steps to file or assert such a lien prior to entering into this Agreement, upon Supplier's receipt of the Agreed Supplier Payment, Supplier will promptly take all necessary actions to remove such lien.

5. <u>Breach</u>.

a. In the event that the Company pays Supplier its Agreed Supplier Payment and Supplier is determined by the Court to have breached this Agreement (a "<u>Supplier Breach</u>"), upon written notice to Supplier describing the nature of the Supplier's defaults hereunder (which the Supplier shall have the right to dispute in accordance with Section 7(d)) and the Supplier's failure to cure such default within five (5) business days of such notice, Supplier shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Agreed Supplier Payment or any portion of the Agreed Supplier Payment which cannot be recovered by the Company from the postpetition receivables then owing to Supplier from the Company.

b. In the event that the Company recovers the Agreed Supplier Payment pursuant to Section 5(a) hereof or otherwise, the full Prepetition Supplier Claim shall be reinstated as if the Agreed Supplier Payment had not been made, and Supplier shall be authorized to file a proof of claim on account of the Agreed Supplier Claim by the later of (i) any bar date set in these chapter 11 cases or (ii) 30 calendar days following the return of the Agreed Supplier Payment.

c. Supplier acknowledges and agrees that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Company. Accordingly, Supplier agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to seek an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Agreement. Supplier hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

d. In the event the Company fails to pay for goods or services produced, shipped, or delivered postpetition in accordance with this Agreement, and the Company fails to cure such default within five business days (or such longer period if the purported breach cannot be cured within five days but the Company is diligently pursuing cure) after receiving written notice of such default (which the Company shall have the right to dispute in accordance with Section 7(d)), the Supplier (a) may terminate this Agreement and shall have no obligation to continue to supply goods or provide services to the Company and (b) is authorized to file a proof of claim in the amount of the Prepetition Supplier Claim less any amount of the Agreed Supplier Payment paid by the Company to the Supplier by the later of (i) any bar date set in these chapter 11 cases or (ii) 30 calendar days following expiration of the cure period contemplated in this paragraph. The Parties reserve all rights to dispute the relative priority of such claim.

6. Notice.

If to Supplier, then to the person and address identified in the signature block hereto.

If to Company:

Claire's Holdings LLC
2400 West Central Road
Hoffman Estates, Illinois 60192
United States

Attention: Brendan McKeough, Executive Vice President, Chief Legal Officer, and Secretary

with a copy (which shall not constitute notice) to:

Kirkland & Ellis LLP
601 Lexington Avenue, New York, New York 10022
Attn: Allyson B. Smith
Email: allyson.smith@kirkland.com
Facsimile: (212) 446-4900

and

4

>Kirkland & Ellis LLP
>333 West Wolf Point Plaza, Chicago, Illinois 60654
>Attn:   Alexandra F. Schwarzman, P.C. and Robert A. Jacobson
>Email: alexandra.schwarzman@kirkland.com
>Email: rob.jacobson@kirkland.com
>Facsimile:  (312) 862-2200
>
>and
>
>Richards, Layton & Finger, P.A.
>One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801
>Attn:   Paul N. Heath and Zachary I. Shapiro
>Email: heath@rlf.com
>            shapiro@rlf.com
>Facsimile:  (302) 651-7701

7. <u>Representations and Acknowledgements</u>.  The Parties agree, acknowledge, and represent that:

   a. the Parties have reviewed the terms and provisions of the Interim Order and this Agreement and consent to be bound by such terms and that this Agreement is expressly subject to the procedures approved pursuant to the Interim Order;

   b. any payments made on account of the Prepetition Supplier Claim, including the Agreed Supplier Payment, shall be subject to the terms and conditions of the Interim Order;

   c. if Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under this Agreement, the Interim Order, the Bankruptcy Code, or applicable law; and

   d. in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from Supplier to the Company, or the Company's payment to the Supplier for such goods and services, until a ruling of the Court is obtained.

8. <u>Confidentiality</u>.  In addition to any other obligations of confidentiality between Supplier and Company, Supplier agrees to hold in confidence and not disclose to any party:
(a) this Agreement; (b) any and all payments made by the Company pursuant to this Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "<u>Confidential Information</u>"); *provided* that if any party seeks to compel Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Supplier intends to disclose any or all of the Confidential Information, Supplier shall immediately provide the Company with written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; *provided*, *further*, that if such remedy is not obtained, Supplier shall furnish only such information as Supplier is legally required to provide.

5

9. <u>Miscellaneous</u>.

a. The Parties hereby represent and warrant that: (a) they have full authority to execute this Agreement on behalf of the respective Parties; (b) the respective Parties have full knowledge of, and have consented to, this Agreement; and (c) they are fully authorized to bind that Party to all of the terms and conditions of this Agreement.

b. This Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them. This Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by both Parties.

c. Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

d. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

e. The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Agreement. The terms of this Agreement shall be governed by the Bankruptcy Code and the laws of the State of Delaware, each as may be applicable.

f. This Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[*Signature Page Follows*]

AGREED AND ACCEPTED AS OF THE DATE SET FORTH BELOW:

**COMPANY**                                              **[SUPPLIER]**

_____                              _____
By:                                                      By:
Title:                                                   Title:
                                                         Address for Notice:

                                                         Date: