## EXHIBIT A

**Motion**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO USE
CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion. In further support of this motion, the Debtors respectfully

submit (a) the *Declaration of William C. Kosturos in Support of the Motion of Debtors for Entry*

*of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting*

*Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay,*

*(IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Kosturos Declaration"),

attached hereto as **Exhibit B**, and is incorporated by reference herein.[2]

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343). The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]  A detailed description of the Debtors and their business, including the facts and circumstances supporting the motion, is set forth in the *Declaration of Chris Cramer, Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer of Claire's Holdings LLC and Certain of Its Affiliates in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings*, filed contemporaneously herewith (the "First Day Declaration"). Capitalized terms used but not defined in this motion shall have the meanings ascribed to them in the First Day Declaration and the Kosturos Declaration, as applicable.

**Preliminary Statement**

1.      As described more fully in the First Day Declaration and the Kosturos Declaration, the Debtors commenced the above-captioned chapter 11 cases to complete a value-maximizing monetization of substantially all of their assets.  To accomplish that, the Debtors require access to liquidity.  All of the Debtors' available cash, including any proceeds generated from operations, constitutes collateral of the Debtors' prepetition secured lenders.  Accordingly, the Debtors do not have sufficient unencumbered cash to bridge to any transaction (whether a going-concern or orderly liquidation), let alone the costs of administering these chapter 11 cases.  Immediate access to cash collateral is critical to fund these chapter 11 cases and continue operation of their business while monetization efforts are ongoing in order to preserve the value of the Debtors' estates.

2.      Given the Debtors' anticipated funding needs to successfully complete an orderly monetization of their assets, the Debtors and their advisors engaged with the Prepetition Secured Parties (as defined below) in the lead up to these cases to negotiate the terms of consensual use of Cash Collateral (as defined in section 363(a) of the Bankruptcy Code) and ensure a smooth transition into chapter 11.  Specifically, the Debtors negotiated with the Prepetition Secured Parties to develop a budget, adequate protection package, and case timeline to induce the Prepetition Secured Parties to consent to the Debtors' use of their Cash Collateral.  The Debtors and the Prepetition Secured Parties agreed that consensual use of Cash Collateral—not a new debtor-in-possession financing facility—was appropriate in light of the Debtors' circumstances and anticipated cadence of the chapter 11 cases.  The agreed upon terms regarding the consensual use of Cash Collateral are set forth in the proposed Interim Order.

3.      The terms and conditions for the Debtors' use of Cash Collateral, as reflected in the proposed Interim Order, represent the best option available to the Debtors under the circumstances and constitute a reasonable compromise with the Prepetition Secured Parties to permit the Debtors'

continued use of Cash Collateral to fund necessary operations while the Debtors complete their asset monetization process. Without access to these funds, the Debtors, their creditors, and their estates would suffer irreparable harm because the Debtors would be forced to immediately cease operations, which, in turn, would cause an abrupt and pronounced deterioration in the value of the Debtors' assets while undergoing a disorderly liquidation. Thus, the Debtors' access to Cash Collateral is fundamental to preserve and maximize the value of their estates for the benefit of all stakeholders.

### Relief Requested

4. The Debtors seek entry of an interim order, substantially in the form attached hereto as **Exhibit A**, and a final order (the "Interim Order" and "Final Order," respectively, and together, the "Cash Collateral Orders"), (a) authorizing the Debtors to use the Cash Collateral of the Prepetition Secured Parties, (b) granting adequate protection, solely to the extent provided in the Cash Collateral Orders, to the Prepetition Secured Parties, (c) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the Cash Collateral Orders, and (d) granting related relief. In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

### Jurisdiction and Venue

5. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final

order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 503, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 4001-2, 9006-1, and 9013-1.

## Background

8.      On August 6, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

## The Debtors Have an Immediate Need for Use of Cash Collateral

9.      As set forth in the Kosturos Declaration, the Debtors immediate access to Cash Collateral is critical for the Debtors' continued operations, to fund the administration of these chapter 11 cases, and necessary to preserve and maximize the value of the Debtors' assets for the benefit of all stakeholders.  Without access to Cash Collateral, the Debtors would be forced to immediately cease operations.  Access to Cash Collateral will permit the Debtors to efficiently achieve an orderly and value-maximizing monetization of their assets for the benefit of all stakeholders.

## **Concise Statement of Material Terms of the Interim Order**

10.    The terms of the Debtors' access to Cash Collateral, as reflected in the Interim Order, were extensively negotiated with the Prepetition Secured Parties and are the most favorable terms that the Debtors were able to obtain under the circumstances.    Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(a)(i), the below chart contains a summary of the material terms of the proposed use of Cash Collateral.[3]

| **Summary of Material Terms** | | **Location** |
|---|---|---|
| **Parties with an Interest in Cash Collateral**<br>Bankruptcy Rule 4001(b)(1)(B)(i) | All parties set forth below shall collectively be referred to as the "Prepetition Secured Parties":<br>• **Prepetition ABL Agent**.    JPMorgan Chase Bank, N.A., as administrative agent and collateral agent.<br>• **Prepetition ABL Lenders**.    The lenders from time to time party to the Prepetition ABL Credit Agreement with respect to the Loans (as defined in the Prepetition ABL Credit Agreement) and any other Obligations (as defined in the Prepetition ABL Credit Agreement).<br>• **Prepetition Priority Term Loan Agent**.    Ankura Trust Company, LLC, as administrative and collateral agent.<br>• **Prepetition Priority Term Loan Lenders**.    The lenders from time to time party to the Prepetition Priority Term Loan Credit Agreement with respect to the Loans (as defined in the Prepetition Priority Term Loan Credit Agreement) and any other Obligations (as defined in the Prepetition Priority Term Loan Credit agreement).<br>• **Prepetition Existing Term Loan Agent**.    Ankura Trust Company, LLC, as administrative and collateral agent.<br>• **Prepetition Existing Term Loan Lenders**.    The lenders from time to time party to the Prepetition Existing Term Loan Credit Agreement with respect to the Loans (as defined in the Prepetition Existing Term Credit Agreement) and any other Obligations (as defined in the Prepetition Existing Term Loan Credit Agreement).<br>The Prepetition ABL Lenders, the Prepetition Priority Term Loan Lenders, and the Prepetition Existing Term Loan Lenders shall collectively be referred to as the "Prepetition Lenders." | ¶ G |

---

[3]    The summaries contained in this motion are qualified in their entirety by the provisions of the Interim Order.    To the extent anything in this motion is inconsistent with the Interim Order, the terms of the Interim Order shall control.    Capitalized terms used but not defined in this chart have the meanings ascribed to them in the Interim Order.

| **Summary of Material Terms** | | <u>Location</u> |
|---|---|---|
| **Amount of Cash Collateral and Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(ii); Local Rule 4001-2(a)(i)(A) | To prevent immediate and irreparable harm to the Debtors' estates, the Debtors are authorized, subject to the terms and conditions of the Interim Order (including the Carve-Out) to use all Cash Collateral in accordance with the Interim Order and the Approved Budget (subject to permitted variances). | ¶ 2 |
| **Adequate Protection and Professional Fees and Expenses** Local Rules 4001-2(a)(i)(B); 4001(b)(1)(B)(iv); 4001-2(a)(i)(G), (K) | <u>ABL Adequate Protection Liens</u>:  The Prepetition ABL Agent, for itself and for the benefit of the Prepetition ABL Lenders, are granted, on account of its Adequate Protection Claims, a valid, automatically perfected security interest in and lien upon (subject and subordinate to the Carve-Out), the Adequate Protection Collateral (the "<u>ABL Adequate Protection Liens</u>").  The ABL Adequate Protection Liens on Adequate Protection Collateral that falls within the scope of (i) ABL Priority Collateral shall (subject and subordinate to the Carve-Out) be senior to all other liens and (ii) CF Debt Priority Collateral (subject and subordinate to the Carve-Out) be subordinate only to Priority Term Loan Adequate Protection Liens, the Prepetition Priority Term Loan Liens, the Existing Term Loan Adequate Protection Liens, and the Prepetition Existing Term Loan Liens.<br><br><u>Prepetition ABL Secured Parties' Section 507(b) Claim</u>:  The Prepetition ABL Agent, for itself and for the benefit of the Prepetition ABL Lenders, shall be entitled to an allowed superpriority administrative expense claim (senior to all other administrative expense claims of any kind but subject and subordinate to the Carve-Out) on account of such Prepetition ABL Secured Parties' Adequate Protection Claims against the Debtors and their estates on a joint and several basis, as provided for in section 507(b) of the Bankruptcy Code (the "<u>ABL 507(b) Claim</u>"), which ABL 507(b) Claim shall be payable from and have recourse to all Adequate Protection Collateral and all proceeds thereof; *provided* that such recourse shall be subject in all respects to the Carve-Out and the Prepetition ABL Intercreditor Agreement.<br><br><u>Priority Term Loan Adequate Protection Liens</u>:  The Prepetition Priority Term Loan Agent, for itself and for the benefit of the Prepetition Priority Term Loan Lenders, will be granted, on account of its Adequate Protection Claims, a valid, automatically perfected security interest in and lien upon (subject and subordinate to the Carve-Out) the Adequate Protection Collateral (the "<u>Priority Term Loan Adequate Protection Liens</u>").  The Priority Term Loan Adequate Protection Liens on Adequate Protection Collateral that falls within the scope of (i) CF Debt Priority Collateral shall (subject to the subordinate to the Carve-Out) be senior to all other liens and (ii) ABL Priority Collateral shall (subject and subordinate to the Carve-Out) be subordinate only to the ABL Adequate Protection Liens and the Prepetition ABL Priority Liens, subject to the Prepetition Intercreditor Agreements.<br><br><u>Prepetition Priority Term Loan Secured Parties' Section 507(b) Claim</u>. The Prepetition Priority Term Loan Agent, for itself and for the benefit of the Prepetition Priority Term Loan Lenders, shall be entitled to an | ¶ 5 |

| **Summary of Material Terms** | **Location** |
| --- | --- |

allowed superpriority administrative expense claim (senior to all other administrative expense claims of any kind but subject and subordinate to the Carve-Out) on account of such Prepetition Priority Term Loan Secured Parties' Adequate Protection Claims as provided for in section 507(b) of the Bankruptcy Code (the "Priority Term Loan 507(b) Claim") which Priority Term Loan 507(b) Claim shall be payable from and have recourse to all Adequate Protection Collateral and all proceeds thereof; *provided* that such recourse shall be subject in all respects to the Carve-Out and the Prepetition Intercreditor Agreements.

Existing Term Loan Adequate Protection Liens: The Prepetition Existing Term Loan Agent, for itself and for the benefit of the Prepetition Existing Term Loan Lenders, will be granted, on account of its Adequate Protection Claims, a valid, automatically perfected security interest in and lien upon (subject and subordinate to the Carve-Out) the Adequate Protection Collateral (the "Existing Term Loan Adequate Protection Liens"). The Existing Term Loan Adequate Protection Liens on Adequate Protection Collateral that falls within the scope of (i) CF Debt Priority Collateral shall (subject to the subordinate to the Carve-Out) be senior to all liens, other than Priority Term Loan Adequate Liens and the Prepetition Priority Term Loan Liens, in a manner consistent with the Prepetition Priority First Lien Intercreditor Agreement and the Term Loan Priority Principles and (ii) ABL Priority Collateral shall (subject and subordinate to the Carve-Out) be subordinate only to the ABL Adequate Protection Liens and the Prepetition ABL Priority Liens, in a manner consistent with the Prepetition ABL Intercreditor Agreement, and to the Priority Term Loan Adequate Protection Liens and the Prepetition Priority Term Loan Liens, in a manner consistent with the Prepetition Priority First Lien Intercreditor Agreement.

Prepetition Existing Term Loan Secured Parties' Section 507(b) Claims. The Prepetition Existing Term Loan Agent, for itself and for the benefit of the Prepetition Existing Term Loan Lenders, shall be entitled to an allowed superpriority administrative expense claim (senior to all other administrative expense claims of any kind but subject and subordinate to the Carve-Out) on account of such Prepetition Existing Term Loan Secured Parties' Adequate Protection Claims as provided for in section 507(b) of the Bankruptcy Code (the "Existing Term Loan 507(b) Claim"), which Existing Term Loan 507(b) Claim shall be payable from and have recourse to all Adequate Protection Collateral and all proceeds thereof; *provided* that such recourse shall be subject in all respects to the Carve-Out and the Prepetition Intercreditor Agreements.

Adequate Protection Fees. As further adequate protection, the Debtors shall provide the Prepetition Agents, for the benefit of the Prepetition Secured Lenders, current cash payments of the reasonable and documented prepetition and postpetition fees and expenses of the Prepetition Agents under the Prepetition Credit Documents, each as set forth in the Interim Order.

ABL Adequate Protection Information Rights. The Debtors shall provide to the Prepetition ABL Agent all reporting required under the Prepetition ABL Credit Agreement consistent with the Debtors' prepetition practices

| **Summary of Material Terms** | **Location** |
|---|---|
| and in accordance with its terms and any other reporting as reasonably requested by the Prepetition ABL Agent or its advisors as soon as practicable after request, including daily balances of cash by legal entity (in form consistent with the reporting delivered to the Prepetition ABL Agent prior to the Petition Date) and any other reporting as reasonably requested by the Prepetition ABL Agent; *provided* that the Debtors shall not be required to deliver audited financials or quarterly financial reporting.  The Debtors shall provide all such reporting in substantially similar form to the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, the Majority Priority Term Loan Lenders, the Majority Existing Term Loan Lenders, and the advisors to each of the foregoing.<br><br>Additional Adequate Protection:<br>• ABL Postpetition Interest.  As set forth in the Interim Order, from and after entry of the Interim Order, the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Lenders, shall receive current cash payment during the Chapter 11 Cases of all accrued interest on the Prepetition ABL Obligations under the Prepetition ABL Credit Agreement as such interest becomes due and payable during the Chapter 11 Cases at the applicable contractual default rate (including interest on interest) and in the amounts specified in the Prepetition ABL Credit Agreement.  The first interest payment date shall be September 1, 2025, and thereafter, the first business day of ever calendar month.<br><br>• ABL Rollover.  Upon the termination of any applicable Interest Period (as defined in the Prepetition ABL Credit Agreement), each Term SOFR Loan (as defined in the Prepetition ABL Credit Agreement) shall automatically convert to and be deemed to be an ABR Loan (as defined in the Prepetition ABL Credit Agreement) for all purposes under the Prepetition ABL Credit Agreement; *provided* that no break funding payments shall be payable in connection therewith.<br><br>• Term Loan Postpetition Interest.  As set forth in the Interim Order, the Prepetition Priority Term Loan Agent, on behalf of itself and the Prepetition Priority Term Loan Lenders, and the Prepetition Existing Term Loan Agent, on behalf of itself and the Prepetition Existing Term Loan Lenders, shall receive during the Chapter 11 Cases all accrued interest on the Prepetition Priority Term Loan Obligations and the Prepetition Existing Term Loan Obligations, as applicable; *provided* that such interest shall be paid in kind.<br><br>• Borrowing Base Reporting:  As set forth in the Interim Order, the Debtors shall deliver to the Prepetition ABL Agent, the Prepetition Priority Term Loan Agent, the Prepetition Existing Term Loan Agent, the Majority Priority Term Loan Lenders, the Majority Existing Term Loan Lenders, and each of their advisors, a Borrowing Base Certificate for the Borrowing Base.<br><br>• Asset Monetization Process Reporting.  As set forth in the Interim Order, the Debtors and their advisors shall provide, information and updates in connection with any sale or monetization process | |

| **Summary of Material Terms** | **Location** |
|---|---|
| | conducted by the Debtors and/or their advisors (including by any liquidators hired by the Debtors) to the Prepetition ABL Agent, the Prepetition Priority Term Loan Agent, the Prepetition Existing Term Loan Agent, the Majority Priority Term Loan Lenders, the Majority Existing Term Loan Lenders, and each of their advisors.<br><br>• Maintenance of Collateral.  The Debtors shall continue to maintain and insure the Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Credit Documents.<br><br>• Adequate Protection Milestones. The Prepetition Secured Parties are entitled to performance of, and the Debtors shall satisfy, the Adequate Protection Milestones as set forth in Schedule 2 of the Interim Order. | |
| **Limitation of the Court's Power and/or Discretion** Local Rule 4001-2(a)(i)(C) | The Interim Order does not contain any provisions that specifically limit the Court's authority to enter future orders in the Debtors' chapter 11 cases. | N/A |
| **Provisions that Provide for the Funding of Non-Debtor Affiliates** Local Rule 4001-2(a)(i)(D) | The Interim Order does not permit the Debtors to transfer any funds to any non-Debtor affiliate or subsidiary other than in accordance with the Cash Management Order. | N/A |
| **Budget** Bankruptcy Rule 4001(b)(1)(B)(ii); Local Rules 4001-2(a)(i)(E) and 4001-2(a)(iii) | The use of Cash Collateral is subject to a budget approved by the Prepetition Secured Parties and the Debtors.  The Initial Budget is attached to the Interim Order as Schedule 1. | ¶¶ H(x), 2, 6 |
| **Carve-Out** Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(F) | The Interim Order provides a "Carve-Out" of certain statutory fees and allowed professional fees of the Debtors and any official committee appointed in these chapter 11 cases pursuant to section 1103 of the Bankruptcy Code and a Post-Carve Out Trigger Notice Cap, all as detailed in the Interim Order. | ¶ 9 |
| **Postpetition Liens on Unencumbered Assets** Local Rule 4001-2(a)(i)(G) | Adequate Protection Collateral includes unencumbered estates assets, excluding Avoidance Actions, but including, any Avoidance Proceeds (but excluding the Funded Reserve Account and any amounts held therein). | ¶ 5 |
| **Milestones** Local Rule 4001-2(a)(i)(H) | The Interim Order requires the Debtors to comply with certain milestones set forth in Schedule 2 to the Interim Order, unless such milestones are waived by the Prepetition Secured Parties as set forth therein. | Schedule 2 |
| **Payment of Adequate Protection Fees Without Review** Local Rule 4001-2(a)(i)(K) | The Interim Order provides for payment of the reasonable and documented prepetition and postpetition fees and expenses of the Prepetition Agents under the applicable Prepetition Credit Documents (collectively, the "Adequate Protection Fees and Expenses"), subject to the terms set forth therein. | ¶¶ 5, 17 |

9

| **Summary of Material Terms** | **Location** |
|---|---|
| | Subject to the review procedures set forth in paragraph 16 of the Interim Order, payment of all Adequate Protection Fees and Expenses shall not be subject to allowance or review by the Court.  Professionals for the Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines, however, any time that such professionals seek payment of fees and expenses from the Debtors prior to confirmation of a chapter 11 plan, each professional shall provide summary copies of its invoices including aggregate amounts of fees and expenses and total amount of time on a per-professional basis (which shall not be required to contain time detail and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information) to the Review Parties.  Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within seven (7) calendar days after the receipt by the Review Parties (the "Review Period").  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the end date of the Review Period, the Debtors shall pay such invoices within five (5) business days of the end of the Review Period.  If an objection to a professional's invoice is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice without the necessity of filing formal fee applications, regardless of whether such amounts arose or were incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the date of entry of this Interim Order any Adequate Protection Fees and Expenses incurred on or prior to such date without the need for any professional engaged by, or on behalf of, the Prepetition Secured Parties to first deliver a copy of its invoice or other supporting documentation to the Review Parties (other than the Debtors).<br><br>No attorney or advisor for the Prepetition Secured Parties shall not be required to file an application seeking compensation for services or reimbursement of expenses with the Court. | |
| **Limitation on Estate Funds Related to the Challenge Period**<br>Local Rule 4001-2(a)(i)(L) | The limitation on use of estate funds related to the Challenge Period is $50,000. | ¶ 19 |
| **Termination Date/Remedies**<br>Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rules 4001-2(a)(i) and 4001-2(a)(i)(M), (S) | Upon the occurrence of a Cash Collateral Termination Event, subject to the Cash Collateral Remedies Notice Period and unless the Court orders otherwise, the Directing Cash Collateral Agent may terminate its consent to the Debtors' use of Cash Collateral.<br><br>Subject to the Cash Collateral Remedies Notice Period, upon the occurrence of a Cash Collateral Termination Event, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent and the Prepetition Secured Parties may, subject to the terms of the Prepetition Intercreditor Agreements and the Carve-Out, | ¶¶ 10-11 |

| Summary of Material Terms | Location |
|---|---|
| | exercise the rights and remedies available under the Prepetition Credit Documents, the Interim Order, or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Collateral in order to collect the Adequate Protection Obligations or the Prepetition Secured Obligations. | |
| **Termination Events** Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(M) | The events set forth in paragraph 11 of the Interim Order are collectively referred to as the "Cash Collateral Termination Events" and include termination events that are customary in a cash collateral order, such as:<br><br>• The failure to make any payment pursuant to paragraph 4 or 5 of the Interim Order;<br><br>• The filing of any motion or pleading by the Debtors to stay, vacate, reverse, amend, or modify the Interim Order or Final Order in a manner adverse to the Prepetition Secured Parties;<br><br>• The Court shall have entered an order, or the Debtors shall have filed a motion or application seeking an order, or the Debtors fail to timely contest a motion or application filed by another party seeking an order, (i) converting one or more of the Chapter 11 Cases of a Debtor to a case under chapter 7 of the Bankruptcy Code, (ii) appointing an examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code, a trustee, or a responsible officer, in one or more of the Chapter 11 Cases of a Debtor, or (iii) dismissing the Chapter 11 Cases;<br><br>• The entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors;<br><br>• The Debtors shall attempt to invalidate, reduce or otherwise impair the Prepetition Secured Obligations;<br><br>• The Debtors lose the exclusive right to file and solicit acceptances of a chapter 11 plan;<br><br>• The creation of any liens on Collateral that are *pari passu* or senior to the liens in favor of the applicable Prepetition Secured Parties (except the Carve-Out);<br><br>• The Debtors' failure to comply with any Adequate Protection Milestone set forth on Schedule 2 hereto, to the extent such Adequate Protection Milestone is not extended or waived in accordance with Schedule 2 hereto;<br><br>• The effective date of any chapter 11 plan;<br><br>• The conversion of any of the Chapter 11 Cases to a case under chapter 7;<br><br>• The failure to (i) deliver any Borrowing Base Certificate when required, (ii) provide daily balances of cash by legal entity (in form consistent with the reporting delivered to the Prepetition ABL Agent Prior to the Prepetition ABL Agent prior to the Petition Date), or (iii) the failure to make any other adequate protection payments required to be made under the Interim Order or Final Order to the Prepetition | ¶ 10 |

| <u>**Summary of Material Terms**</u> | <u>**Location**</u> |
|---|---|
| | |

<table>
<tr><td></td><td>Secured Parties, in each case after three (3) business days' notice and an opportunity to cure;</td><td></td></tr>
<tr><td></td><td>• The lifting of the Automatic Stay with respect to or the exercise of any remedies against any portion of the Collateral with a fair value in excess of $1,000,000;</td><td></td></tr>
<tr><td></td><td>• The expenditure by any of the Debtors of Cash Collateral other than in accordance with the Approved Budget (subject to the Permitted Deviations) (including by funding any expenditures prior to their budgeted time for payment) or the failure to provide any of the reports and other information as required by the paragraph titled "Budget Reporting" of this Interim Order;</td><td></td></tr>
<tr><td></td><td>• A failure by the Debtors of any Variance Test (subject to Permitted Deviations);</td><td></td></tr>
<tr><td></td><td>• A material breach by the Debtors of the Interim Order (*provided* that the terms and provisions with respect to adequate protection shall be deemed material);</td><td></td></tr>
<tr><td></td><td>• The stay, reversal, vacatur, rescission or other modification of the Interim Order or Final Order in a manner materially adverse to the Prepetition Secured Parties;</td><td></td></tr>
<tr><td></td><td>• Any of the Debtors file any motions, pleadings, briefs, or support any other parties in furtherance of any event that would constitute a Cash Collateral Termination Event;</td><td></td></tr>
<tr><td></td><td>• The earlier of (i) the sale of all Collateral, whether through a going-concern sale, liquidation, or otherwise, and (ii) October 3, 2025, which may be extended by the Directing Cash Collateral Agent in its sole discretion; and</td><td></td></tr>
<tr><td></td><td>• Any bidding procedures motion, bidding procedures order, de minimis assets procedures motion, de minimis asset procedures order, stalking horse bid, asset purchase agreements, sale orders and all other related documents pursuant to which the Company Parties may sell assets pursuant to Section 363 of the Bankruptcy Code outside of the ordinary course of business (the "<u>Sale Documents</u>") or agency agreement of any liquidation firm in connection with a liquidation of the Debtors (the "<u>Agency Agreement</u>") are not in form and substance acceptable to the Prepetition ABL Required Lenders, or the Sale Documents or such Agency Agreement are modified in any material manner without the prior written consent of the Directing Cash Collateral Agent.</td><td></td></tr>
<tr><td>**Validity, Perfection, and Amount of Obligations Securing Prepetition Liens, Binding Effect of Stipulations on Third Parties, and Challenge Period**<br>Bankr. R.</td><td>The Debtors' stipulations, admissions, agreements and releases contained in the Interim Order shall be binding upon the Debtors in all circumstances and for all purposes. The Debtors' stipulations, admissions, agreements, and releases contained in the Interim Order shall be binding upon all other parties in interest and the Debtors' estates, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases (including any Creditors' Committee) and any other person or entity acting or seeking to act on behalf of the Debtors' estates including any chapter 7 or chapter 11 trustee</td><td>¶ 18</td></tr>
</table>

| **Summary of Material Terms** | | **Location** |
| --- | --- | --- |
| 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(Q) | or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) such committee or any other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so) has timely filed an adversary proceeding or contested matter (subject to the limitations contained in the Interim Order, including in paragraph 13 thereof) by no later than (i) sixty (60) calendar days after the Petition Date; *provided* that, if the Chapter 11 Cases are converted to chapter 7 and a chapter 7 trustee or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period, then the Challenge Period for any such chapter 7 trustee or chapter 11 trustee shall be (solely as to such chapter 7 trustee and chapter 11 trustee) the date that is the later of (1) sixty (60) calendar days after the Petition Date and (2) thirty (30) days after the appointment of such chapter 7 trustee or chapter 11 trustee, and (ii) any such later date as (w) has been agreed to by the Prepetition ABL Agent with respect to the Prepetition ABL Obligations or the Prepetition ABL Liens, (x) has been agreed to by the Prepetition Existing Term Loan Agent with respect to the Prepetition Existing Term Loan Obligations or the Prepetition Existing Term Loan Liens, (y) has been agreed to by the Prepetition Priority Term Loan Agent with respect to the Prepetition Priority Term Loan Obligations or the Prepetition Priority Term Loan Liens, or (z) has been ordered by the Court for cause upon a motion filed and served within any applicable period (the time period established by the foregoing clauses (i)-(ii), the "<u>Challenge Period</u>"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Debt or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "<u>Challenges</u>") against the Prepetition Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each, a "<u>Representative</u>" and, collectively, the "<u>Representatives</u>") in connection with matters related to the Prepetition Credit Documents, the Prepetition Secured Debt, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter, subject to the terms of the Interim Order. | |
| **Waiver/Modification of Automatic Stay** Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(S) | • The automatic stay under section 362 of the Bankruptcy Code shall be modified to the extent necessary to permit the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, and the Prepetition Priority Term Loan Agent to take all actions, as applicable, referenced in paragraph 7 of the Interim Order (Perfection of Adequate Protection Liens).<br><br>• The automatic stay under section 362 of the Bankruptcy Code shall be modified and vacated to the extent necessary to permit (i) upon the occurrence and during the continuance of a Cash Collateral | ¶¶ 7, 11, 32 |

| **Summary of Material Terms** | | **Location** |
|---|---|---|
| | Termination Event, the Directing Cash Collateral Agent to (x) deliver a Default Notice and (y) subject to the Debtors' permitted uses of Cash Collateral during the Cash Collateral Remedies Notice Period, terminate any use of Cash Collateral and (ii) such other actions as described in the foregoing, provided that during the Cash Collateral Remedies Notice Period, unless the Court orders otherwise, the automatic stay under section 362 of the Bankruptcy Code (to the extent applicable) shall remain in effect. | |
| | • The automatic stay is modified to permit affiliates of the Debtors who are not debtors in these Chapter 11 Cases to take all actions as are necessary or appropriate to implement the terms of the Interim Order. | |
| **Provisions Limiting the Rights of Parties in Interest** Local Rule 4001-2(a)(i)(T) | The Interim Order does not contain any provisions that specifically limit what parties in interest may raise at any emergency hearing scheduled during the Cash Collateral Remedies Notice Period. | ¶ 10(b) |
| **Section 506(c) and 552(b) Waiver** Local Rule 4001-2(a)(i)(V); 4001-2(a)(i)(W) | Waiving (a) the Debtors' right to surcharge the Prepetition Collateral and the Adequate Protection Collateral pursuant to section 506(c) of the Bankruptcy and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code; *provided* that the foregoing waivers (i) shall be without prejudice to any provisions of the Final Order with respect to costs or expenses incurred following entry of such Final Order and (ii) be otherwise on the terms set forth therein. | ¶¶ H, 12-14 |
| **Marshaling Waiver** Local Rule 4001-2(a)(i)(X) | Waiving the equitable doctrine of "marshaling" and other similar doctrines with respect to the Collateral for the benefit of any party other than the Prepetition Secured Parties; *provided* that the foregoing waiver shall be without prejudice to any provisions of the Final Order. | ¶ 13 |

## Explanation for Inclusion of Significant Provisions Pursuant to Local Rule 4001-2(a)(i)

I.    **The Significant Provisions Are Appropriate and Justified Under the Circumstances of These Chapter 11 Cases.**

11.    Local Rule 4001-2(a)(i) requires that the Debtors explain the reason for including certain significant provisions described in Local Rules 4001-2(a)(i)(N)–(X) (collectively, the "Significant Provisions").[4]  The Debtors believe that each of the Significant Provisions, as well

---

[4]    Local Rules 4001-2(a)(i)(N), (O), and (R) are not applicable to the Interim Order.  In addition, as further explained above, Local Rule 4001-2(a)(i)(P) does not apply and Local Rules 4001-2(a)(i)(U)–(X) are only applicable upon entry of the Final Order.

as the Carve-Out, is justified and necessary in the context and circumstances of these chapter 11 cases.

> **A.     The Scope of the Carve Out Is Appropriate (Local Rule 4001-2(a)(i)(F)).**

12.     The proposed Adequate Protection is subject to the Carve-Out.  Without the Carve-Out, the Debtors and other parties in interest may be deprived of certain rights and powers, including the right to select their own professionals, because the services for which professionals may be paid in these chapter 11 cases would be restricted.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").  Moreover, the Carve-Out serves to enhance the value of these estates because, in the absence of a carveout, "nobody will represent the debtor or the committee and the case will fall apart, further diminishing the overall value of the secured creditor's collateral[.]"  *In re Molycorp, Inc.*, 562 B.R. 67, 76 n. 39 (Bankr. D. Del. 2017).  The Carve-Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers.  Additionally, the Carve-Out protects against administrative insolvency on account of process costs during the course of these chapter 11 cases by ensuring that assets remain for any payment owing to the Clerk of the Court, payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930, and professional fees of the Debtors and any statutory committee.

> **B.     The Findings of Validity, Perfection, or Amount of Prepetition Liens and Challenge Period Are Appropriate (Local Rule 4001-2(a)(i)(Q)).**

13.     Local Rule 4001-2(a)(i)(Q) requires explicit disclosure of provisions that bind the estate or other parties in interest with respect to the validity, perfection, or amount of the secured

creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five days from the entry of the order to investigate such matters.

14.     Here, the Interim Order complies with this requirement by providing any committee appointed in these chapter 11 cases and other parties in interest, in each case, with requisite standing, to file an adversary proceeding challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Secured Debt or the Prepetition Liens, or otherwise asserting or prosecuting any actions against the Prepetition Secured Parties and their Representatives (as defined in the Interim Order), (a) sixty calendar days after the Petition Date (or in the case of a chapter 7 or chapter 11 trustee the later of (i) sixty calendar days after the Petition Date or (ii) thirty days after the appointment of such chapter 7 or chapter 11 trustee), (b) any such later date as agreed to by the Prepetition ABL Agent (with respect to the Prepetition ABL Facility and the Prepetition ABL Obligations), the Prepetition Priority Term Loan Agent (with respect to the Prepetition Priority Term Loan Facility and the Prepetition Priority Term Loan Obligations), and the Prepetition Existing Term Loan Agent (with respect to the Prepetition Existing Term Loan Facility and the Prepetition Existing Term Loan Obligations), or (c) as ordered by the Court for cause.

### C.    The Provisions Modifying the Automatic Stay, Providing for a Cash Collateral Remedies Notice Period, and Providing for a Default Notice Hearing Are Appropriate (Local Rules 4001-2(a)(i)(S), (T)).

15.     Local Rules 4001-2(a)(i)(S) and (T) require explicit disclosure of provisions that modify the automatic stay upon a Cash Collateral Termination Event without remedies notice period and provisions that seek to limit what parties in interest may raise at an emergency hearing during a remedies notice period.  The Interim Order provides for a standard five business-day

remedies notice period for all Cash Collateral Termination Events and does not limit what parties in interest may raise during an emergency hearing scheduled during remedies notice period.

16.     In light of the foregoing, the Debtors submit that the Significant Provisions are appropriate under the facts and circumstances of these chapter 11 cases.  Accordingly, the Significant Provisions in the Interim Order should be approved.

## **The Debtors' Prepetition Indebtedness and Need to Use Cash Collateral**

**I.      The Debtors' Prepetition Capital Structure.**

17.     As of the Petition Date, the Debtors have approximately $676.6 million in principal amount of total funded debt obligations.

| Debt Facility | Maturity | Approximate Principal Outstanding |
|---|---|---|
| *Secured Debt* | | |
| **Prepetition ABL Facility** | September 30, 2027[5] | $63.5 million[6] |
| **Prepetition Priority Term Loan Facility** | May 15, 2026 | $121.1 million |
| **Prepetition Existing Term Loan Facility** | December 18, 2026 | $492.0 million |
| | **Total:** | **$676.6 million** |

**A.      The Prepetition ABL Facility**

18.     The Debtors are party to that certain ABL Credit Agreement, dated as of September 30, 2022 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "Prepetition ABL Credit Agreement" and, collectively, with the other Credit Documents (as defined in the Prepetition Credit Agreement)

---

[5]     If (a) more than $50 million of Prepetition Existing Term Loan Debt is outstanding and (b) unrestricted cash *plus* excess availability is less than the amount of outstanding Prepetition Existing Term Loan Debt, then the Prepetition ABL Facility maturity date occurs 91 days before the Prepetition Existing Term Loan Facility maturity date.

[6]     The Company also has approximately $5.7 million of undrawn letters of credit issued and outstanding under the Prepetition ABL Facility supporting workers compensation and general liability insurance, among other obligations.

and any other agreements and documents executed or delivered in connection therewith, each as may have been amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition ABL Credit Documents"), by and among Claire's Holdings LLC, as the parent guarantor, Claire's Stores, Inc., as holdings, the other borrowers and guarantors party thereto from time to time, JPMorgan Chase Bank, N.A. as administrative agent and collateral agent (solely, in such capacity, the "Prepetition ABL Agent"), and the lenders from time to time party thereto (the "Prepetition ABL Lenders," and together with the Prepetition ABL Agent and all other holders of Prepetition ABL Debt (as defined below), the "Prepetition ABL Secured Parties").  The Prepetition ABL Credit Agreement provides for an asset-based revolving credit facility with commitments of $150 million (the "Prepetition ABL Facility"), with borrowings subject to capacity under the U.S. Borrowing Base and U.K. Borrowing Base (as defined in the Prepetition ABL Credit Agreement).  For loans in U.S. dollars, the Prepetition ABL Facility bears interest at SOFR + 1.25-1.75% (payable in cash).[7] All loans under the Prepetition ABL Facility mature on September 30, 2027.

19.    The guarantors under the Prepetition ABL Credit Agreement are, in each case other than with respect to its own borrowing obligations:  Claire's Holdings LLC, the Prepetition Existing Term Loan Guarantors,[8] the Prepetition Priority Term Loan Guarantors,[9] Claire's (Gibraltar Holdings Limited), Claire's European Services Limited, Claire's Accessories UK Ltd,

---

[7]    The Prepetition ABL Credit Agreement contains 0.10% credit spread adjustment on Term SOFR.  The Prepetition ABL Facility includes a SOFR "floor" (including the credit spread adjustment) of 0.00%.

[8]    The "Prepetition Existing Term Loan Guarantor" are:  (i) Claire's Puerto Rico Corp.; (ii) Claire's Boutiques, Inc.; (iii) Claire's Canada Corp.; (iv) Claire's Swiss Holdings LLC; (v) Claire's Swiss Holdings II LLC; (vi) CSI Canada LLC; (vii) CBI Distributing Corp.; (viii) CLSIP Holdings LLC; (ix) BMS Distributing Corp.; (x) CLSIP LLC; and (xi) Claire's Intellectual LLC.

[9]    The "Prepetition Priority Term Loan Guarantors" are:  (i) all of the Prepetition Existing Term Loan Guarantors, other than Claire's Boutiques, Inc. (the borrower under the Prepetition Priority Term Loan Facility); and (ii) Claire's Stores, Inc.

and Claire's European Distribution Limited.  Claire's (Gibraltar Holdings Limited) and the U.K. Borrowers[10] guarantee the borrowings of Claire's (Gibraltar) Holdings Limited and U.K. Borrowers only, in each case other than with respect to their own borrowing obligations.  The Prepetition ABL Facility is secured by liens on substantially all of the Debtors' assets, including a first priority lien on, among other things, inventory, accounts, and certain receivables (the "Prepetition ABL Priority Collateral"), and a second-priority lien on a substantially all other assets, including, among other things, intellectual property and certain stock pledges (the "Prepetition Term Loan Priority Collateral," and together with the Prepetition ABL Priority Collateral, the "Prepetition Collateral").  As of the Petition Date, $63.5 million in borrowings remain outstanding under the Prepetition ABL Facility as well as approximately $5.7 million of undrawn letters of credit issued and outstanding under the Prepetition ABL Facility that support workers' compensation and general liability insurance, among other obligations (collectively, the "Prepetition ABL Debt").

**B.      The Prepetition Term Loan Facilities.**

1.      *The Prepetition Priority Term Loan Facility.*

20.      Claire's Boutiques, Inc. is party to that certain Priority Term Loan Credit Agreement, dated as of September 23, 2024 (s amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Priority Term Loan Credit Agreement," and collectively with the other Credit Documents (as defined in the Prepetition Priority Term Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may have been amended, restated, amended and restated, supplemented,

---

[10]      The "U.K. Borrowers" are:  (i) Claire's European Services Limited; (ii) Claire's Accessories UK Ltd.; and (iii) Claire's European Distribution Limited.

waived, or otherwise modified prior to the Petition Date, the "Prepetition Priority Term Loan Credit Documents"), by and among Claire's Holdings LLC, as the parent guarantor, Claire's Boutiques, Inc., as borrower, the other guarantors party thereto, Ankura Trust Company LLC, as administrative and collateral agent (the "Prepetition Priority Term Loan Agent"), and certain financial institutions party thereto from time to time as lenders (collectively, the "Prepetition Priority Term Loan Lenders," and collectively, with the Prepetition Priority Term Loan Agent and all other holders of Prepetition Priority Term Loan Debt (as defined below), the "Prepetition Priority Term Loan Secured Parties").  The obligations under the Prepetition Priority Term Loan Credit Agreement are guaranteed by the Prepetition Priority Term Loan Guarantors.

21.     The Prepetition Priority Term Loan Credit Agreement provides for a secured term loan facility in the aggregate secured by liens on substantially all of the Debtors' assets, including a first-priority lien on Prepetition Term Loan Priority Collateral, and a second-priority lien on Prepetition ABL Priority Collateral subject to exclusions for certain excluded collateral and limitations on perfection steps as set forth in the Prepetition Priority Term Loan Credit Agreement (the "Prepetition Priority Term Loan Facility").  The Prepetition Priority Term Loan Facility bears interest at bears interest at SOFR[11] + 7.25%, and such interest is paid in kind.  The Prepetition Priority Term Loan Facility matures on May 15, 2026, and as of the Petition Date, the outstanding principal amount of the Prepetition Priority Term Loan Facility is approximately $121.1 million (together with interest and fees, the "Prepetition Priority Term Loan Debt").  Pursuant to the Term Loan Priority Intercreditor Agreement (as defined herein), the Prepetition Priority Term Loan

---

[11]     The Prepetition Priority Term Loan Facility includes a SOFR "floor" of 1.00%.

Secured Parties are senior in right of payment to the Prepetition Existing Term Loan Secured Parties.

22.     The Company initially entered into the Prepetition Priority Term Loan Facility in September 2024, in an effort to address the Company's working capital needs and provide runway for the Company to refine and implement its turnaround plan.  While the Prepetition Priority Term Loan Facility provided the Company with time to formulate and begin to execute on its turnaround plan, by the first quarter of 2025, it became clear that the Company would need incremental financing.  The Company obtained an additional $50 million in the form of incremental Priority Term Loans pursuant to that certain Amendment No. 3 to the Prepetition Priority Term Loan Credit Agreement, which was executed on February 27, 2025.  The Company subsequently raised an incremental $16 million of Prepetition Priority Term Loans in June 2025.

2.     *The Prepetition Existing Term Loan Facility.*

23.     Claire's Stores, Inc. is party to that certain Term Loan Credit Agreement, dated as of December 18, 2019 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Existing Term Loan Credit Agreement," and collectively with the other Credit Documents (as defined in the Prepetition Existing Term Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may have been amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition Existing Term Loan Credit Documents"), by and among Claire's Holdings LLC, as the parent guarantor, Claire's Stores, Inc., as borrower, Ankura Trust Company, LLC, as administrative and collateral agent (successor to JPMorgan Chase Bank, N.A.) (the "Prepetition Existing Term Loan Agent" and, together with the Prepetition ABL Agent and the Prepetition Priority Term Loan Agent, collectively, the "Prepetition Agents"), and certain financial institutions party thereto from time to time as lenders (collectively, the "Prepetition

Existing Term Loan Lenders," and collectively with the Prepetition Existing Term Loan Agent, and all other holders of Prepetition Existing Term Loan Debt (as defined below), the "Prepetition Existing Term Loan Secured Parties" and, together with the Prepetition ABL Secured Parties and the Prepetition Priority Term Loan Secured Parties, the "Prepetition Secured Parties"). The Prepetition Existing Term Loan Credit Agreement provides for a first lien term loan facility (the "Prepetition Existing Term Loan Facility") in the aggregate principal amount of approximately $492 million (together with interest and fees, the "Prepetition Existing Term Loan Debt").  The Prepetition Existing Term Loan Facility bears interest at SOFR + 6.50%,[12] with such interest paid in-kind at the option of the Debtors, and matures on December 18, 2026.

24.     The guarantors under the Prepetition Existing Term Loan Credit Agreement are the Prepetition Existing Term Loan Guarantors.  Like the Prepetition Priority Term Loan Facility, the Prepetition Existing Term Loan Facility is secured by liens on substantially all of the Debtors' assets, including a first-priority lien on Prepetition Term Loan Priority Collateral, and a second-priority lien on Prepetition ABL Priority Collateral, subject to exclusions for certain excluded collateral and limitations on perfection steps as set forth in the Prepetition Existing Term Loan Credit Agreement.  Pursuant to the Term Loan Priority Intercreditor Agreement, the Prepetition Existing Term Loan Secured Parties are junior in right of payment to the Prepetition Priority Term Loan Secured Parties.

**C.     Intercreditor Agreements.**

25.     The relationship between the Prepetition ABL Facility and the Prepetition Priority Term Loan Facility and the Prepetition Existing Term Loan Facility (collectively, the "Prepetition

---

[12]     The Prepetition Lenders under the Prepetition Existing Term Loan Facility benefit from a 0.10% credit spread adjustment.  The Prepetition Existing Term Loan Facility includes a SOFR "floor" (including the credit spread adjustment) of 0.00%.

Term Loan Facilities") is governed by that certain ABL Intercreditor Agreement, dated as of December 18, 2019 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, including as supplemented by that certain Lien Sharing and Priority Confirmation Joinder, dated as of September 23, 2024, the "ABL Intercreditor Agreement," and together with the Term Loan Priority Intercreditor Agreement, the "Intercreditor Agreements") among, *inter alios*, JPMorgan Chase Bank, N.A., as ABL agent, Ankura Trust Company, LLC, as existing administrative agent and priority first lien administrative agent.  The ABL Intercreditor Agreement provides that the Prepetition ABL Facility has a senior lien on Prepetition ABL Priority Collateral vis-à-vis the Prepetition Term Loan Facilities and a junior lien on the Prepetition Term Loan Priority Collateral vis-à-vis the Prepetition Term Loan Facilities, irrespective of the time, order or method of creation, attachment or perfection of the liens securing the Prepetition ABL Facility and Prepetition Term Loan Facilities.

26.    The relationship between the Prepetition Term Loan Facilities is governed by that certain Priority First Lien Intercreditor Agreement, dated as of September 23, 2024, (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time) between, *inter alios*, Ankura Trust Company, LLC, as the priority first lien administrative agent and Ankura Trust Company, LLC, as the existing credit agreement administrative agent (the "Term Loan Priority Intercreditor Agreement").  Pursuant to the Term Loan Priority Intercreditor Agreement, the Prepetition Priority Term Loan Facility is senior in right of payment vis-à-vis the Prepetition Existing Term Loan Facility.  The Term Loan Priority Intercreditor Agreement also provides that, notwithstanding the date, time, manner, or order of grant, attachment, or perfection of the liens securing the Prepetition Priority Term Loan Facility and Prepetition Existing Term Loan Facility, such liens are of equal priority.

**II.    The Debtors' Immediate Need to Use Cash Collateral**

27.    As set forth in the Kosturos Declaration, and as described herein, the Debtors need to use cash on hand and cash generated from operations to fund their business throughout these chapter 11 cases and to support a value-maximizing monetization of the Debtors' assets.  As of the Petition Date, the Debtors estimate that they have approximately $24.1 million of available cash on hand, all of which is subject to the Prepetition Secured Parties' security interests and, thus, constitutes the Prepetition Lenders' Cash Collateral.  The Debtors have determined that access to Cash Collateral will be sufficient to continue operating their remaining business in chapter 11 while pursuing a value-maximizing sale or sales for the benefit of all stakeholders.  Without access to Cash Collateral, the Debtors would be unable to preserve the value of their estates and fund the administration of these cases, resulting in immediate and irreparable harm.

28.    The Debtors, with the assistance of their advisors, have developed a 13-week cash flow forecast (the "Initial Budget") for the use of Cash Collateral during the chapter 11 cases. The Debtors believe that the Initial Budget (as defined in the Interim Order) establishes that the Debtors will have adequate liquidity during the interim period as required by Local Rule 4001-2(a)(iii).   The Initial Budget contains line items for cash flows anticipated to be received and disbursed during the time period for which the Initial Budget is prepared.   The Debtors believe that the Initial Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of their business for the period set forth in the Initial Budget.

**Basis for Relief**

I.    **The Debtors' Request to Use Cash Collateral and Proposed Adequate Protection Is Appropriate.**

29.    Section 363 of the Bankruptcy Code governs the Debtors' use of property of their estates, including Cash Collateral.[13]  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  The Prepetition Secured Parties consented to the Debtors' use of Cash Collateral in exchange for the proposed customary adequate protection package set forth in the Interim Order.

30.    Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral.  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996) (en banc).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14

---

[13]    The Bankruptcy Code defines "cash collateral" as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

(Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, No. 91-803, 1992 WL 79323, at \*2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361–66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding")).

31.     The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180–81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

**II.     The Proposed Adequate Protection for the Prepetition Secured Parties Is Sufficient.**

32.     As described above, and as set forth in the Interim Order, the Debtors propose to provide the Prepetition Secured Parties with several forms of adequate protection (collectively, the "Adequate Protection"):

33.     **Adequate Protection Liens**.  Each of the Prepetition ABL Agent (for the benefit of itself and the Prepetition ABL Lenders), the Prepetition Priority Term Loan Agent (for the benefit of itself and the Prepetition Priority Term Loan Lenders), and the Prepetition Existing Term Loan Agent (for the benefit of itself and the Prepetition Existing Term Loan Lenders) will be granted, pursuant to sections 361 and 363(e) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable, and perfected replacement and additional postpetition security interests in, and liens on Adequate Protection Collateral (as defined in the Interim Order), which shall be subject and subordinate only to the Carve-Out and the lien priorities set forth in the Interim Order.

34.    **Adequate Protection 507(b) Claims**.  Solely to the extent of any diminution in value, the Debtors will grant the Prepetition ABL Agent (for the benefit of itself and the Prepetition ABL Lenders), the Prepetition Priority Term Loan Agent (for the benefit of itself and the Prepetition Priority Term Loan Lenders), and the Prepetition Existing Term Loan Agent (for the benefit of itself and the Prepetition Existing Priority Term Loan Lenders), allowed superpriority administrative claims pursuant to section 507(b) of the Bankruptcy Code, which superpriority administrative expense claims shall be senior to all other administrative expense claims of any kind but subject and subordinate to the Carve-Out and the priorities set forth in the Prepetition Intercreditor Agreements with respect to the Adequate Protection Collateral.

35.    **Adequate Protection Fees and Expenses**.  The Debtors will pay the reasonable and documented fees and out-of-pocket expenses of the Prepetition Secured Parties.

36.    **Other Adequate Protection**.  The Debtors will provide additional adequate protection to the Prepetition Secured Parties in the form of, among other things, (a) the cash payment of postpetition interest under the Prepetition ABL Credit Documents, (b) postpetition interest to be paid-in-kind on the Prepetition Priority Term Loan Obligations and the Prepetition Existing Term Loan Obligations; (c) the provision of certain financial and other reporting, (d) the maintenance of collateral as required under the Prepetition Credit Documents, (e) compliance with certain milestones applicable to the chapter 11 cases (unless extended or waived by each of the Prepetition Agents, as applicable), and (f) with regard to the Prepetition ABL Secured Parties, the periodic paydown of the Prepetition ABL Obligations.

37.    The Debtors respectfully submit that the proposed Adequate Protection is sufficient to protect the Prepetition Secured Parties from any diminution in value caused by, among other reasons, the Debtors' use of the Prepetition Collateral, including the Cash Collateral, during the

pendency of these chapter 11 cases.  Considering the foregoing, the Debtors submit that the proposed Adequate Protection to be provided for the benefit of the Prepetition Secured Parties is appropriate.  The Debtors' proposed Adequate Protection is not only necessary to protect the Prepetition Secured Parties against any diminution in value, but is also fair and appropriate under the circumstances of these chapter 11 cases to ensure the Debtors are able to continue using the Cash Collateral, subject to the terms and limitations set forth in the Interim Order, for the benefit of all parties in interest and their estates.

### III.    Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.

38.    Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen days after the service of such motion.  Upon request, however, the Court is authorized to conduct a preliminary expedited hearing on this motion and authorize the Debtors' proposed use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates.  *See* Fed. R. Bankr. P. 4001(b)(2); Local Rule 4001-2(b).  Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]."  11 U.S.C. § 363(c)(3).

39.    The Debtors have an immediate postpetition need to use Cash Collateral to administer these chapter 11 cases and to maintain and preserve the value of their estates while they pursue an efficient monetization of their assets.  The Debtors believe that substantially all of their available cash constitutes the Prepetition Lenders' cash collateral, as that term is used by section 363(c) of the Bankruptcy Code.  The Debtors will therefore be unable to proceed with their proposed sale process or otherwise fund these chapter 11 cases without access to Cash Collateral

and will suffer immediate and irreparable harm to the detriment of all stakeholders. In short, the Debtors' access to Cash Collateral is fundamental to the success of these chapter 11 cases.

40.     The Debtors therefore seek immediate authority to use the Cash Collateral as set forth in this motion and in the Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(b)(ii). Accordingly, to the extent that the Debtors require the use of Cash Collateral, the Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001 and Local Rule 4001-2 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

## IV.    The Automatic Stay Should Be Modified on a Limited Basis.

41.     The relief requested herein contemplates modification of the automatic stay to the extent necessary to implement and effectuate the terms and provisions of the Interim Order, and specifically permit the Prepetition Agents, each in their sole discretion, to file such financing statements, mortgages, security agreements, notices of liens, or other similar documents as necessary. The Interim Order further provides that, upon the expiration of the applicable remedies notice period, the automatic stay will be automatically modified to permit the Prepetition Secured Parties to immediately retain and apply payments and otherwise enforce their respective rights and remedies under and in accordance with the Interim Order, subject and subordinate to the Carve-Out.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

42.     Bankruptcy Rule 6003 empowers a court to grant certain relief within the first 21 days after the petition date only to the extent that relief is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a). For the reasons set forth above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors'

29

operations.  Failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and cause immediate and irreparable harm.  The requested relief is necessary for the Debtors to operate their business in a value-maximizing manner for the benefit of all stakeholders.  The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and request that the Court grant the requested relief.

## **Reservation of Rights**

43.    Notwithstanding anything to the contrary herein, nothing contained in this motion or any actions taken pursuant to any order granting the relief requested in this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount, validity, or priority of, or basis for, any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code;

(i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

## Notice

44.      The Debtors will provide notice of this motion to the following parties or their respective counsel, as applicable:  (a)  the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (b) the Prepetition Priority Term Loan Agent; (c) the Prepetition Existing Term Loan Agent; (d) the Prepetition ABL Agent; (e) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (f) the United States Attorney for the District of Delaware; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

45.      No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of the page intentionally left blank]*

WHEREFORE, the Debtors request entry of the Interim Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  August 6, 2025
Wilmington, Delaware

*/s/ Zachary I. Shapiro*

| | |
|---|---|
| **RICHARDS, LAYTON & FINGER, P.A.** | **KIRKLAND & ELLIS LLP** |
| Daniel J. DeFranceschi (No. 2732) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Paul N. Heath (No. 3704) | Joshua A. Sussberg, P.C. (*pro hac vice* pending) |
| Zachary I. Shapiro (No. 5103) | Allyson B. Smith (*pro hac vice* pending) |
| Clint M. Carlisle (No. 7313) | 601 Lexington Avenue |
| Colin A. Meehan (No. 7237) | New York, New York 10022 |
| One Rodney Square | Telephone:    (212) 446-4800 |
| 920 N. King Street | Facsimile:    (212) 446-4900 |
| Wilmington, Delaware 19801 | Email:    joshua.sussberg@kirkland.com |
| Telephone:    (302) 651-7700 |         allyson.smith@kirkland.com |
| Facsimile:    (302) 651-7701 | |
| Email:    defranceschi@rlf.com | - and - |
|         heath@rlf.com | |
|         shapiro@rlf.com | Alexandra F. Schwarzman, P.C. (*pro hac vice* pending) |
|         carlisle@rlf.com | Robert A. Jacobson (*pro hac vice* pending) |
|         meehan@rlf.com | 333 West Wolf Point Plaza |
| | Chicago, Illinois 60654 |
| | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |
| | Email:    alexandra.schwarzman@kirkland.com |
| |         rob.jacobson@kirkland.com |
| | |
| *Proposed Co-Counsel for the Debtors and Debtors in Possession* | *Proposed Co-Counsel for the Debtors and Debtors in Possession* |

**<u>Exhibit A</u>**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) Case No. 25-11454 (BLS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**INTERIM ORDER (I) AUTHORIZING
THE DEBTORS TO (A) USE CASH COLLATERAL, AND
(B) GRANT LIENS AND PROVIDE SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIMS, (II) GRANTING ADEQUATE PROTECTION TO CERTAIN
PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2 and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of this interim order (this "Interim Order") and the Final Order (as defined herein) as applicable, among other things:

   (i)   authorizing the Debtors to use Cash Collateral (as defined herein) solely in accordance with this Interim Order and the Approved Budget (as defined herein);

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]   Capitalized terms used but not defined herein are given the meanings ascribed to such terms in the Motion or the Prepetition Credit Documents, as applicable (each as defined herein).

(ii)    granting the Debtors authority to provide adequate protection to the Prepetition Secured Parties (as defined herein) for their interests in the Prepetition Collateral (as defined herein), including Cash Collateral;

(iii)    approving certain stipulations by the Debtors with respect to the Prepetition Credit Documents (as defined herein) and the Prepetition Collateral as set forth herein;

(iv)    waiving (a) the Debtors' right to surcharge the Prepetition Collateral (as defined herein) and the Adequate Protection Collateral (as defined herein) (together, the "Collateral") pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code; *provided* that the foregoing waivers (i) shall be without prejudice to any provisions of the Final Order with respect to costs or expenses incurred following the entry of such Final Order and (ii) be otherwise on the terms set forth herein;

(v)    waiving the equitable doctrine of "marshaling" and other similar doctrines with respect to the Collateral for the benefit of any party other than the Prepetition Secured Parties; *provided* that the foregoing waiver shall be without prejudice to any provisions of the Final Order;

(vi)    vacating and modifying the automatic stay under section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent set forth herein and as necessary to permit the Debtors and their affiliates and the Prepetition Secured Parties to implement and effectuate the terms and provisions of this Interim Order, and, upon entry, the Final Order, and to deliver any notices of termination described below and as further set forth herein;

(vii)    waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order and, upon entry, the Final Order; and

(viii)    scheduling a final hearing (the "Final Hearing") to consider final approval of the use of Cash Collateral pursuant to a proposed final order[3] (the "Final Order"), as set forth in the Motion filed with this Court.

The Court having considered the interim relief requested in the Motion, the *Declaration of William C. Kosturos, Managing Director of Alvarez & Marsal North America LLC, in Support of the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Use Cash Collateral, and (B) Grant Liens and Provide Superpriority Administrative Expense Claims (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the*

---

[3]    A proposed Final Order will be posted to the docket prior to the Final Hearing.

*Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Kosturos Declaration"), and the *Declaration of Chris Cramer, Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer of Claire's Holdings LLC and Certain of Its Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") and the evidence submitted and arguments made at the interim hearings held on August [●], 2025 (the "Interim Hearing"); and due and sufficient notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), 9014, and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to this Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, is fair and reasonable and in the best interests of the Debtors and their estates, is essential for the preservation of the value of the Debtors' assets, and is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[4]

A.    *Petition Date.*  On August 6, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Bankruptcy Court for the District of Delaware (the "Court").  On [●], 2025, this Court entered an order approving the joint administration of the Chapter 11 Cases.

B.     *Debtors in Possession*.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

C.     *Jurisdiction and Venue*.  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409. The predicates for the relief sought herein are sections 105, 361, 362, 363(b), 363(c), 363(e), 363(m), 503, 506, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Local Rules 2002-1(b), 4001-2, and 9013-1.

D.     *Committee Formation*.  As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (to the extent appointed in the Chapter 11 Cases, the "Creditors' Committee").

E.     *Notice*.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice was required under the circumstances to enter this Interim Order.  The interim

relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

F.    *Cash Collateral*.  As used herein, the term "Cash Collateral" shall mean all of the Debtors' cash, whether existing as of the Petition Date or thereafter, wherever located and held, and whether as original collateral or proceeds of other Prepetition ABL Collateral (as defined herein) or of other CF Debt Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement (as defined herein)), including cash in deposit accounts, that constitutes or will constitute "cash collateral" of any of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

G.    *Debtors' Stipulations*.  Subject to the provisions and limitations contained in paragraph 18 hereof (including the Challenge Period, as defined therein), and after consultation with their attorneys and financial advisors, the Debtors admit, stipulate and agree that:

(i)    *Prepetition ABL Facility*.  Pursuant to that certain ABL Credit Agreement dated as of September 30, 2022 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition ABL Credit Agreement," and collectively with the other Credit Documents (as defined in the Prepetition ABL Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may have been amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition ABL Credit Documents" and the credit facilities evidenced thereby, collectively, the "Prepetition ABL Facility"), among (a) Claire's Stores, Inc. ("CSI" or the "Prepetition ABL Borrower"), (b) Claire's Holdings LLC ("Holdings"), (c) the other borrowers and guarantors party thereto from time to time (together with CSI and Holdings, the "Prepetition ABL Credit Parties"), (d) JPMorgan Chase Bank, N.A., as administrative agent

and collateral agent (solely in such capacity, the "Prepetition ABL Agent"), and (e) the lenders from time to time party thereto with respect to the Loans (as defined in the Prepetition ABL Credit Agreement) and any other Obligations (as defined in the Prepetition ABL Credit Agreement) (collectively, the "Prepetition ABL Lenders," and collectively with the Prepetition ABL Agent, and all other holders of Prepetition ABL Debt (as defined below), the "Prepetition ABL Secured Parties"), the Prepetition ABL Lenders provided revolving credit and other financial accommodations to the Prepetition ABL Borrower pursuant to the Prepetition ABL Credit Documents, and the Prepetition ABL Credit Parties incurred and/or guaranteed on a joint and several basis the Obligations (as defined in the Prepetition ABL Credit Agreement, the "Prepetition ABL Obligations") under the Prepetition ABL Credit Agreement and the other Prepetition ABL Credit Documents;

(ii)    *Prepetition Priority Term Loans*.  Pursuant to that certain Priority Term Loan Credit Agreement dated as of September 23, 2024 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Priority Term Loan Credit Agreement," and collectively with the other Credit Documents (as defined in the Prepetition Priority Term Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may have been amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition Priority Term Loan Credit Documents" and the credit facilities evidenced thereby, collectively, the "Prepetition Priority Term Loan Credit Facility"), among (a) Claire's Boutiques, Inc. (the "Prepetition Priority Term Loan Borrower"), (b) Holdings, (c) the other guarantors party thereto (and, together with the Prepetition Priority Term Loan Borrower and Holdings, the "Prepetition Priority Term Loan Credit Parties"), (d) Ankura Trust Company, LLC, as

administrative agent and collateral agent (solely in such capacity, the "Prepetition Priority Term Loan Agent"), and (e) the lenders from time to time party thereto with respect to the Loans (as defined in the Prepetition Priority Term Loan Credit Agreement) and any other Obligations (as defined in the Prepetition Priority Term Loan Credit Agreement) (collectively, the "Prepetition Priority Term Loan Lenders," and collectively with the Prepetition Priority Term Loan Agent, and all other holders of Prepetition Priority Term Loan Debt (as defined below), the "Prepetition Priority Term Loan Secured Parties"), the Prepetition Priority Term Loan Lenders provided term loans and other financial accommodations to the Prepetition Priority Term Loan Borrower pursuant to the Prepetition Priority Term Loan Credit Documents, and the Prepetition Priority Term Loan Credit Parties incurred and/or guaranteed on a joint and several basis the Obligations (as defined in the Prepetition Priority Term Loan Credit Agreement, the "Prepetition Priority Term Loan Obligations") under the Prepetition Priority Term Loan Credit Agreement and the other Prepetition Priority Term Loan Credit Documents.

(iii)    *Prepetition Existing Term Loans*.  Pursuant to that certain Term Loan Credit Agreement dated as of December 18, 2019 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Existing Term Loan Credit Agreement," and collectively with the other Credit Documents (as defined in the Prepetition Existing Term Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may have been amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "Prepetition Existing Term Loan Credit Documents" and the credit facilities evidenced thereby, collectively, the "Prepetition Existing Term Loan Credit Facility"), among (a) CSI, (b) Holdings, (c) the other guarantors party thereto (and, together with CSI and Holdings, the "Prepetition Existing Term Loan Credit Parties"),

(d) Ankura Trust Company, LLC, as successor administrative agent and successor collateral agent (solely in such capacity, the "Prepetition Existing Term Loan Agent"), and (e) the lenders from time to time party thereto with respect to the Loans (as defined in the Prepetition Existing Term Loan Credit Agreement) and any other Obligations (as defined in the Prepetition Existing Term Loan Credit Agreement) (collectively, the "Prepetition Existing Term Loan Lenders," and collectively with the Prepetition Existing Term Loan Agent, and all other holders of Prepetition Existing Term Loan Debt (as defined below), the "Prepetition Existing Term Loan Secured Parties" and, together with the Prepetition ABL Secured Parties and the Prepetition Priority Term Loan Secured Parties, the "Prepetition Secured Parties"), the Prepetition Existing Term Loan Lenders provided term loans and other financial accommodations to CSI pursuant to the Prepetition Existing Term Loan Credit Documents, and the Prepetition Existing Term Loan Credit Parties incurred and/or guaranteed on a joint and several basis the Obligations (as defined in the Prepetition Existing Term Loan Credit Agreement, the "Prepetition Existing Term Loan Obligations" and, together with the Prepetition ABL Obligations and the Prepetition Priority Term Loan Obligations, the "Prepetition Secured Obligations") under the Prepetition Existing Term Loan Credit Agreement and the other Prepetition Existing Term Loan Credit Documents.

(iv)    *Prepetition ABL Intercreditor Agreement.*  Pursuant to and to the extent set forth in (i) that certain ABL Intercreditor Agreement, dated as of December 18, 2019 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time prior to the Petition Date) (the "Prepetition ABL Intercreditor Agreement") by and among Citibank, N.A. as original ABL agent, JPMorgan Chase Bank, N.A., as original first lien term loan agent, and Wilmington Trust National Association, as administrative agent and collateral agent for the Additional First Lien Term Loan Secured Parties (as defined in the Prepetition ABL

Intercreditor Agreement), Holdings, CSI, and the subsidiaries of Holdings from time to time party thereto, (ii) that certain Lien Sharing and Priority Confirmation Joinder, dated as of December 18, 2019, among the Prepetition ABL Agent, Citibank, N.A., as original ABL agent, and JPMorgan Chase Bank, N.A., as original first lien term loan agent (the "Prepetition 2019 ABL Intercreditor Joinder"), (iii) that certain Lien Sharing and Priority Confirmation Joinder, dated as of September 23, 2024, among the Prepetition Priority Term Loan Agent, JPMorgan Chase Bank, N.A., as original first lien term loan agent, and the Prepetition ABL Agent, CSI, and the Prepetition Priority Term Loan Borrower (the "Prepetition 2024 ABL Intercreditor Joinder"), and (iv) that certain Notice of Successor Original First Lien Term Loan Agent, dated as of June 25, 2025, among the Prepetition Existing Term Loan Agent and JPMorgan Chase Bank, N.A. (the "Prepetition ABL Intercreditor Successor Term Loan Agent Notice" and, together with the Prepetition ABL Intercreditor Agreement, the Prepetition 2019 ABL Intercreditor Joinder, and the Prepetition 2024 ABL Intercreditor Joinder, the "Prepetition ABL Intercreditor Documents"), the parties thereto agreed, among other things:  (a) that the Prepetition ABL Liens (as defined herein) on the Prepetition ABL Priority Collateral (as defined herein) are senior to the Prepetition Priority Term Loan Liens (as defined herein) and the Prepetition Existing Term Loan Liens (as defined herein) on such collateral; and (b) that the Prepetition Priority Term Loan Liens and the Prepetition Existing Term Loan Liens on CF Debt Priority Collateral are senior to the Prepetition ABL Liens on such collateral.

(v)     *Prepetition Priority First Lien Intercreditor Agreement*.  Pursuant to and to the extent set forth in (i) that certain Priority First Lien Intercreditor Agreement, dated as of September 23, 2024 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time prior to the Petition Date) by and among JPMorgan Chase

Bank, N.A., as original first lien term loan agent, and the Prepetition Priority Term Loan Agent (the "Prepetition Priority First Lien Intercreditor Agreement") and (ii) that certain Notice of Successor Existing Credit Agreement Collateral Agent and Successor Existing Credit Agreement Administrative Agent, dated as of June 25, 2025, among the Prepetition Existing Term Loan Agent and the Prepetition Priority Term Loan Agent (the "Prepetition Priority First Lien Intercreditor Agreement Successor Agent Notice" and, together with the Prepetition Priority First Lien Intercreditor Agreement, Prepetition ABL Intercreditor Documents, Prepetition Existing Term Loan Credit Documents, Prepetition Priority Term Loan Credit Documents, and the Prepetition ABL Credit Documents, the "Prepetition Credit Documents"), the parties thereto agreed, among other things: (a) that the Prepetition Priority Term Loan Obligations are senior in right of payment to the Prepetition Existing Term Loan Obligations; and (b) to be bound by the other waterfall and turnover provisions contained therein.

(vi)     *Prepetition ABL Debt*.   As of the Petition Date, the Prepetition ABL Borrower, Holdings and the other Prepetition ABL Credit Parties were justly and lawfully indebted and liable to the Prepetition ABL Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, for not less than (a) $63,500,000 in outstanding principal amount of Loans (as defined in the Prepetition ABL Credit Agreement) plus interest and fees thereon, plus (b) $5,700,000 of the aggregate stated principal amount available for drawing under all outstanding letters of credit and all unpaid reimbursement obligations with respect to drawn letters of credit (the "Prepetition Letters of Credit"), which loans and outstanding letters of credit were made or issued by the Prepetition ABL Lenders pursuant to, and in accordance with the terms of, the Prepetition ABL Credit Documents, plus, to the extent not otherwise included, accrued and unpaid interest thereon (including default interest and interest on interest), premiums, and fees,

expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition ABL Credit Documents), costs, charges, indemnities, and other obligations incurred in connection therewith (whether arising before or after the Petition Date, whether matured or otherwise, and whether contingent or otherwise) as provided in the Prepetition ABL Credit Documents (collectively, the "Prepetition ABL Debt"), which Prepetition ABL Debt has been incurred and/or guaranteed on a joint and several basis by each of the Prepetition ABL Credit Parties;

(vii)    *Prepetition Priority Term Loan Debt.* As of the Petition Date, the Prepetition Priority Term Loan Borrower, Holdings and the other Prepetition Priority Term Loan Credit Parties were justly and lawfully indebted and liable to the Prepetition Priority Term Loan Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, for not less than $121,121,839.11 in outstanding principal amount of Loans (as defined in the Prepetition Priority Term Loan Credit Agreement) plus interest and fees thereon, which loans were made by the Prepetition Priority Term Loan Lenders pursuant to, and in accordance with the terms of, the Prepetition Priority Term Loan Credit Documents, plus, to the extent not otherwise included, accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition Priority Term Loan Credit Documents), costs, charges, indemnities, and other obligations incurred in connection therewith (whether arising before or after the Petition Date, whether matured or otherwise, and whether contingent or otherwise) as provided in the Prepetition Priority Term Loan Credit Documents (collectively, the "Prepetition Priority Term Loan Debt"), which Prepetition Priority Term Loan Debt has been incurred and/or guaranteed on a joint and several basis by each of the Prepetition Priority Term Loan Credit Parties;

(viii)    *Prepetition Existing Term Loan Debt*. As of the Petition Date, CSI, Holdings and the other Prepetition Existing Term Loan Credit Parties were justly and lawfully indebted and liable to the Prepetition Existing Term Loan Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, for not less than $492,044,555.3 in outstanding principal amount of Loans (as defined in the Prepetition Existing Term Loan Credit Agreement) plus interest and fees thereon, which loans were made by the Prepetition Existing Term Loan Lenders pursuant to, and in accordance with the terms of, the Prepetition Existing Term Loan Credit Documents, plus, to the extent not otherwise included, accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition Existing Term Loan Credit Documents), costs, charges, indemnities, and other obligations incurred in connection therewith (whether arising before or after the Petition Date, whether matured or otherwise, and whether contingent or otherwise) as provided in the Prepetition Existing Term Loan Credit Documents (collectively, the "Prepetition Existing Term Loan Debt" and, together with the Prepetition ABL Debt and the Prepetition Priority Term Loan Debt, the "Prepetition Secured Debt"), which Prepetition Existing Term Loan Debt has been incurred and/or guaranteed on a joint and several basis by each of the Prepetition Existing Term Loan Credit Parties;

(ix)    *Validity of Prepetition Secured Debt*.  Each of the Debtors acknowledges that the Prepetition Secured Debt constitutes legal, valid, binding, and non-avoidable obligations of CSI, the Prepetition Priority Term Loan Borrower, the Prepetition Priority Term Loan Credit Parties, the Prepetition Existing Term Loan Credit Parties, and the Prepetition ABL Credit Parties, as applicable, and shall constitute allowed claims under Sections 502 and 506 of the Bankruptcy Code against the Debtors and their respective affiliates (without the need to file any proofs of

claim), and are enforceable in accordance with their respective terms and the Prepetition Credit Documents, and no portion of the Prepetition Secured Debt or any payment made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Credit Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, disgorgement, defense, counterclaim, offset, recoupment, disallowance, impairment, subordination, recharacterization, avoidance or other claim (as such term is used in the Bankruptcy Code), cause of action (including any claims or avoidance actions under Chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

(x)      *Validity, Perfection and Priority of Prepetition ABL Liens*.  As of the Petition Date, pursuant to and in connection with the Prepetition ABL Credit Documents, CSI, Holdings and the other Prepetition ABL Credit Parties granted to the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Secured Parties, a security interest in and continuing lien (the "Prepetition ABL Liens") on substantially all of their assets and property, including, (i) a valid, binding, properly perfected, enforceable, first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) (which, for the avoidance of doubt, includes certain Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Priority Collateral"), and (ii) a valid, binding, properly perfected, enforceable, junior priority security interest in and continuing lien on the CF Debt Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) (which, for the avoidance of doubt, includes certain Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter

13

acquired or arising (the "Prepetition ABL Junior Collateral" and, together with the Prepetition ABL Priority Collateral, the "Prepetition ABL Collateral"), which Prepetition ABL Liens are not subject to avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), recovery, attack, disgorgement, effect, recoupment, rejection, reduction, disallowance, impairment, counterclaim, offset, crossclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law, subject and subordinate only to the liens of the Prepetition Existing Term Loan Agent and the Prepetition Priority Term Loan Agent on the CF Debt Priority Collateral and certain other liens permitted by the Prepetition ABL Credit Documents, solely to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition ABL Liens as of the Petition Date (the "Prepetition ABL Permitted Senior Liens").

(xi)    *Validity, Perfection and Priority of Prepetition Priority Term Loan Liens.* As of the Petition Date, pursuant to and in connection with the Prepetition Priority Term Loan Credit Documents, the Prepetition Priority Term Loan Borrower, Holdings and the other Prepetition Priority Term Loan Credit Parties granted to the Prepetition Priority Term Loan Agent, for the benefit of itself and the other Prepetition Priority Term Loan Secured Parties, a security interest in and continuing lien (the "Prepetition Priority Term Loan Liens") on substantially all of their assets and property, including, (i) a valid, binding, properly perfected, enforceable, first priority security interest in and continuing lien on the CF Debt Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Priority Term Loan Priority Collateral"), and (ii) a valid, binding, properly perfected, enforceable, junior priority security interest in and continuing lien on the

14

Prepetition ABL Priority Collateral (which, for the avoidance of doubt, includes certain Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "Prepetition Priority Term Loan Junior Collateral" and, together with the Prepetition Priority Term Loan Priority Collateral, the "Prepetition Priority Term Loan Collateral"), which Prepetition Priority Term Loan Liens are not subject to avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), recovery, attack, disgorgement, effect, rejection, reduction, disallowance, impairment, counterclaim, offset, crossclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law, subject and subordinate only to the liens of the Prepetition ABL Agent on the Prepetition ABL Priority Collateral and certain other liens permitted by the Prepetition Priority Term Loan Credit Documents, solely to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Priority Term Loan Liens as of the Petition Date (the "Prepetition Priority Term Loan Permitted Senior Liens") and the Debtors waive, discharge and release any right to challenge any of the Prepetition Secured Debt, the Prepetition ABL Liens, the Prepetition Existing Term Loan Liens (as defined herein), and the Prepetition Priority Term Loan Liens, including any right to challenge or contest in any way the perfection, priority or enforceability of Prepetition Secured Debt, the Prepetition Credit Documents, the Prepetition ABL Liens, the Prepetition Existing Term Loan Liens, and the Prepetition Priority Term Loan Liens.

(xii)    *Validity, Perfection and Priority of Prepetition Existing Term Loan Liens.* As of the Petition Date, pursuant to and in connection with the Prepetition Existing Term Loan Credit Documents, CSI, Holdings and the other Prepetition Existing Term Loan Credit Parties granted to the Prepetition Existing Term Loan Agent, for the benefit of itself and the other

Prepetition Existing Term Loan Secured Parties, a security interest in and continuing lien (the "Prepetition Existing Term Loan Liens," and together with the Prepetition Priority Term Loan Liens and the Prepetition ABL Liens, the "Prepetition Liens") on substantially all of their assets and property, including, (i) a valid, binding, properly perfected, enforceable, first priority security interest in and continuing lien on the CF Debt Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Existing Term Loan Priority Collateral"), and (ii) a valid, binding, properly perfected, enforceable, junior priority security interest in and continuing lien on the Prepetition ABL Priority Collateral (which, for the avoidance of doubt, includes certain Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "Prepetition Existing Term Loan Junior Collateral" and, together with the Prepetition Existing Term Loan Priority Collateral, the "Prepetition Existing Term Loan Collateral," and, collectively, with the Prepetition ABL Collateral and the Prepetition Priority Term Loan Collateral, the "Prepetition Collateral"), which Prepetition Existing Term Loan Liens are not subject to avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), recovery, attack, disgorgement, effect, rejection, reduction, disallowance, impairment, counterclaim, offset, crossclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law, subject and subordinate only to the liens of the Prepetition ABL Agent on the Prepetition ABL Priority Collateral and certain other liens permitted by the Prepetition Existing Term Loan Credit Documents, solely to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Existing Term Loan Liens as of the Petition Date (the "Prepetition Existing Term Loan

Permitted Senior Liens" and, together with any Prepetition ABL Permitted Senior Liens and any Prepetition Priority Term Loan Permitted Senior Liens, the "Prepetition Permitted Senior Liens").

(xiii)   *No Control.*  None of the Prepetition ABL Secured Parties control (or have in the past controlled) the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted or are control persons or insiders (as defined in section 101(31) of the Bankruptcy Code) of the Debtors or any of their affiliates in each case by virtue of any actions taken with respect to, in connection with, related to or arising from this Interim Order, the Prepetition Secured Obligations, and/or the Prepetition Credit Documents.

(xiv)   The Debtors are in default under each of the Prepetition Credit Documents, including as a result of the Chapter 11 Cases, and an event of default has occurred and is continuing under each of the Prepetition Credit Documents.

(xv)   *No Claims or Causes of Action.*  As of the date hereof, no claims or causes of action held by the Debtors or their estates exist against, or with respect to, any of the Prepetition Secured Parties or any of their respective Representatives (as defined herein) (in each case, in their capacity as such) under or relating to any Prepetition Credit Documents or the Prepetition Secured Obligations in existence as of the Petition Date.

(xvi)   *Release.*  Effective as of the date of entry of this Interim Order, each of the Debtors and (subject to the Challenge Period in paragraph 18) each of the Debtors' estates, in each case on its own behalf and on behalf of its and their respective past, present and future predecessors, successors, heirs, subsidiaries, Representatives (as defined herein), and assigns, including without limitation any trustee and any Creditors' Committee, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits each of the Prepetition Secured Parties and each of their respective Representatives (in such Representative's capacity) (collectively,

the "Released Parties"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law (including without limitation the Bankruptcy Code) or otherwise (collectively, the "Released Claims"), in each case arising out of or related to (as applicable) the Prepetition Credit Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions and agreements reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order.

H.    *Findings Regarding the Use of Cash Collateral.*

(i)    Good and sufficient cause has been shown for the entry of this Interim Order and for authorization of the Debtors to use Cash Collateral and grant the Prepetition Secured Parties adequate protection.

(ii)    The Debtors have an immediate and critical need to use Prepetition Collateral (including Cash Collateral) in order to permit, among other things, the Debtors' orderly monetization of their assets, to make payroll, to satisfy other working capital and operational needs, and to fund expenses of these Chapter 11 Cases.  The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral is necessary

and vital to the preservation and maintenance of the value of the assets of their estates and the ultimate recovery to the creditors of the Debtors' estates.

(iii)    The Debtors find it prudent, in the exercise of their business judgment, to obtain consensual use of Cash Collateral and, in connection therewith, incur the Adequate Protection Obligations (as defined herein), in each case as provided for herein under the terms and conditions set forth in this Interim Order.

(iv)    The Prepetition Secured Parties either have consented, or are deemed to consent, to the Debtors' use of the Prepetition Secured Parties' Cash Collateral, and to the subordination of the Prepetition Liens to the Carve-Out (as defined herein) on the terms and conditions set forth in this Interim Order; *provided* that nothing in this Interim Order shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Interim Order and the Approved Budget, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) other than as contemplated by this Interim Order, or (z) subject to the Prepetition Intercreditor Agreements, prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection or assert any rights of any of the Prepetition Secured Parties, and the rights of any other party in interest, including the Debtors, to object to such relief are hereby preserved.

(v)    The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral, all of which constitute Prepetition Collateral under the Prepetition Credit Documents that are subject to the Prepetition Secured Parties' security interests as set forth in the Prepetition Credit Documents, as applicable.

19

(vi)     The Debtors desire to use in their business operations a portion of the cash, rents, income, offspring, products, proceeds and profits described in the preceding paragraph (v) that constitute Cash Collateral of the Prepetition Secured Parties under section 363(a) of the Bankruptcy Code. Certain prepetition rents, income, offspring, products, proceeds, and profits, in existence as of the Petition Date or hereafter created or arising, including balances of funds in the Debtors' prepetition and postpetition operating bank accounts, also constitute Cash Collateral.

(vii)     Based on the Motion, the Kosturos Declaration, the First Day Declaration and the record presented to the Court at the Interim Hearing, the terms of the adequate protection granted to the Prepetition Secured Parties as provided in paragraph 5 of this Interim Order (the "Adequate Protection"), and the terms on which the Debtors may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(viii)   The Prepetition Secured Parties have acted in good faith regarding the Debtors' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the Debtors' estates (including the incurrence and payment of and performance under the Adequate Protection Obligations and the granting of the Adequate Protection Liens (as defined herein)), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(ix)     The Prepetition Secured Parties are entitled to the Adequate Protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362,

363 and 364 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and their fiduciary duties, and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral, including the Cash Collateral.

(x)    The Debtors have prepared and delivered to the respective advisors to the Prepetition Secured Parties an initial budget (the "Initial Budget"), attached hereto as Schedule 1. The Initial Budget reflects, among other things, the Debtors' anticipated operating receipts, anticipated operating disbursements, anticipated non-operating disbursements, net operating cash flow and liquidity for each calendar week covered thereby.  The Initial Budget may be modified, amended, extended, and updated from time to time in accordance with paragraph 6(a), and once approved in accordance therewith, each subsequently approved budget shall modify, replace, supplement, or supersede, as applicable, the Initial Budget for the periods covered thereby (the Initial Budget and each subsequently approved budget shall constitute, without duplication, an "Approved Budget").  Updates, modifications, and supplements to the Approved Budget shall not require any further approval of this Court.  The Debtors believe that the Initial Budget is reasonable under the circumstances.  The Prepetition Secured Parties are relying, in part, upon the Debtors' agreement to comply with the Approved Budget (subject to permitted variances), and this Interim Order in determining to allow the use of Cash Collateral as provided for in this Interim Order.

(xi)    Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits with respect to any of the Prepetition

21

Collateral; *provided* that the foregoing shall be without prejudice to the terms of the Final Order with respect to the period from and after the entry of the Final Order.

I.     *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2(b). Absent granting the relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  The permitted use of Prepetition Collateral (including Cash Collateral), in accordance with this Interim Order and Approved Budget, are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.  The Motion and this Interim Order comply with the requirements of Local Rule 4001-2(b).

J.     *Prepetition Permitted Senior Liens; Continuation of Prepetition Liens*.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Prepetition Secured Parties, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Senior Lien and/or security interests.  The right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Senior Lien, as used herein, and is expressly subject to the Adequate Protection Liens (as defined herein) and the Prepetition Liens.  The Prepetition Liens and the Adequate Protection Liens are continuing liens, and the Collateral is and will continue to be encumbered by such liens.

K.     *Intercreditor Agreements.*  Pursuant to section 510 of the Bankruptcy Code, the Prepetition ABL Intercreditor Documents, the Prepetition Priority First Lien Intercreditor Agreement, and any other applicable intercreditor agreements are "subordination agreements," and

the provisions contained in any of the other Prepetition Credit Documents (the "Prepetition Intercreditor Agreements") (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims granted or amounts payable in respect thereof by the Debtors under this Interim Order or otherwise) and (iii) shall not be deemed to be amended, altered, or modified by the terms of this Interim Order, unless expressly set forth herein.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Motion Granted*.  The interim relief sought in the Motion is granted and the use of Cash Collateral on an interim basis is authorized, in each case subject to the terms and conditions set forth in this Interim Order.  All objections to this Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits.

2.      *Use of Cash Collateral*.  To prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized, subject to the terms and conditions of this Interim Order (including the Carve-Out) to use all Cash Collateral in accordance with this Interim Order and the Approved Budget (subject to permitted variances); *provided* that (a) the Prepetition Secured Parties are granted the Adequate Protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the Debtors shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

3.      *Case Administration Reserve*.   Upon entry of this Interim Order, the Debtors shall establish, subject to the liens of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, and the Prepetition Priority Term Loan Agent, in each case, to the extent set forth in this paragraph 3, a reserve in a segregated account (the "Case Administration Reserve"), which reserve shall be funded in accordance with the Approved Budget from ABL Priority Collections (as defined herein) and the proceeds of the Prepetition Collateral (including Cash Collateral) in the amount of $14,000,000, and is subject to adjustment in accordance with the budget approval process set forth in paragraph 6(a) (such amount as may be adjusted, the "Case Administration Reserve Amount"), without duplication of any amounts funded to the Carve-Out Reserves.   Any segregated account formed to hold the proceeds of the Case Administration Reserve is referred to herein as a "Reserve Account."   All funds in the Reserve Accounts shall be used, subject to the Approved Budget, first to pay all allowed and undisputed claims of the Debtors arising after a Cash Collateral Termination Event as set forth in this paragraph and such claims shall benefit from the Case Administration Reserve until such claims are paid in full.   If, after paying all such amounts, the Case Administration Reserve has not been reduced to zero, all remaining funds in the Case Administration Reserve shall first be applied to fund the Carve-Out Reserve (to the extent not already fully funded) and second as set forth in paragraph 4 hereof.   The Case Administration Reserve and the Reserve Accounts shall constitute Collateral hereunder; *provided* that, notwithstanding any other provision of this Interim Order or the Prepetition Secured Parties' rights and remedies under this Interim Order or applicable law, following a Cash Collateral Termination Event (as defined herein), the proceeds of the Case Administration Reserve shall be applied, and the Debtors are expressly authorized, to pay without further order of this Court, all accrued and unpaid allowed or undisputed liabilities set forth in the Approved Budget with respect to the Case

24

Administration Reserve related to the line items "Payroll, Benefits & Taxes" and "Taxes – Sales and Other" whether accrued on or after the occurrence of a Cash Collateral Termination Event (the "<u>Required Reserve Payments</u>"), prior to the Prepetition Secured Parties' exercise of any remedies authorized hereunder with respect to the Case Administration Reserve or the Reserve Accounts.  Following a Cash Collateral Termination Event, the Debtors shall provide written notice to the Directing Cash Collateral Agent as soon as reasonably practicable that the disbursements authorized pursuant to the preceding sentence have been made (any such notice, a "<u>Reserve Satisfaction Notice</u>").   Any such payments shall permanently reduce the Case Administration Reserve.  Immediately upon the Directing Cash Collateral Agent's receipt of a Reserve Satisfaction Notice, the Directing Cash Collateral Agent and any other Prepetition Secured Parties (as applicable) shall be entitled to exercise any rights and remedies provided under this Interim Order or applicable law with respect to the Case Administration Reserve subject to such notice in accordance with the terms of this Interim Order and the Prepetition Intercreditor Agreements.

4.     *Asset Monetization*.  On the second Business Day of each week after the date hereof, any cash received by the Debtors from the sale of ABL Priority Collateral (as defined herein), including, without limitation, accounts (as defined in the UCC), sale of inventory, loan advances, refunds, cash proceeds, or extraordinary receipts (together "<u>ABL Priority Collections</u>") (which, for the avoidance of doubt shall not include any proceeds from the sale of Prepetition Priority Term Loan Priority Collateral or Prepetition Existing Term Loan Priority Collateral) as of the previous Saturday (each, a "<u>Repayment Determination Date</u>"), the amount of ABL Priority Collections in excess of the amounts necessary to fully fund the Case Administration Reserve and the Carve-Out Reserve, in each case in accordance with the Approved Budget, shall be transferred to the

Prepetition ABL Agent until repayment in full of all the Prepetition ABL Obligations (a "Repayment Transfer"). The Prepetition ABL Agent shall, and is hereby authorized to, apply such amounts to repay any then outstanding Prepetition ABL Obligations held by the Prepetition ABL Secured Parties and to cash collateralize any Prepetition Letters of Credit, in each case as set forth and in accordance with the priorities and terms of the Prepetition ABL Credit Agreement.

5.      *Adequate Protection of Prepetition Secured Parties*.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral (including Cash Collateral) for the diminution in the value of their respective interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the sale, lease, or use by the Debtors' estates of the Prepetition Collateral, the use of Cash Collateral, the payment of any amounts under the Carve-Out or Case Administration Reserve or pursuant to this Interim Order, the Final Order or any other order of the Court or provision of the Bankruptcy Code or otherwise, and the imposition of the Automatic Stay (the "Adequate Protection Claims"). In consideration of the foregoing, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, and the Prepetition Priority Term Loan Agent, as applicable, and for the benefit of the applicable Prepetition Secured Parties, subject in all respects to the Prepetition Intercreditor Agreements, are hereby granted the following as Adequate Protection on account of their Adequate Protection Claims, and as an inducement to the Prepetition Secured Parties to consent to the use of the Prepetition Collateral (including Cash Collateral) (collectively, the "Adequate Protection Obligations"):

(a)    *ABL Adequate Protection Liens.*  The Prepetition ABL Agent, for itself and for the benefit of the Prepetition ABL Lenders, is hereby granted (effective and automatically perfected upon the date of this Interim Order and ratified and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), on account of its Adequate Protection Claims, a valid, automatically perfected first priority security interest in and lien upon (subject and subordinate to the Carve-Out) (i) all tangible and intangible prepetition and postpetition property of the Debtors (including the Prepetition Collateral), whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, including, without limitation, any and all cash of the Debtors (wherever held) and any investment of cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, causes of action, insurance policies and rights, claims and proceeds from insurance, chattel paper (including electronic chattel paper and tangible chattel paper), real property leaseholds, owned real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, equity interests of subsidiaries, joint ventures and other entities, commercial tort claims, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, as well as (subject to the entry of the Final Order) claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions") provided that a lien shall be granted immediately hereunder on any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise ("Avoidance Proceeds"), but

excluding the Funded Reserve Account and any amounts held therein (collectively, the "Adequate Protection Collateral," and the liens thereon, the "ABL Adequate Protection Liens"). The ABL Adequate Protection Liens on Adequate Protection Collateral that falls within the scope of (i) ABL Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) and previously unencumbered assets of the type that constitute ABL Priority Collateral (together with the ABL Priority Collateral as defined in the Prepetition ABL Intercreditor Agreement, the "ABL Priority Collateral") shall (subject and subordinate to the Carve-Out) be senior to all other liens and (ii) CF Debt Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) shall (subject and subordinate to the Carve-Out) be subordinate only to the Priority Term Loan Adequate Protection Liens, the Prepetition Priority Term Loan Liens, the Existing Term Loan Adequate Protection Liens, and the Prepetition Existing Term Loan Liens; *provided* that notwithstanding the foregoing, upon payment of all amounts required to be paid from the Funded Reserve Account hereunder, subject to the Prepetition Intercreditor Agreements, the Funded Reserve Account and any remaining funds therein shall constitute ABL Priority Collateral hereunder and the ABL Adequate Protection Liens shall attach thereto.

(b)     *Prepetition ABL Secured Parties' Section 507(b) Claim*. The Prepetition ABL Agent, for itself and for the benefit of the Prepetition ABL Lenders, is hereby granted an allowed superpriority administrative expense claim (senior to all other administrative expense claims of any kind but subject and subordinate to the Carve-Out) on account of such Prepetition ABL Secured Parties' Adequate Protection Claims against the Debtors and their estates on a joint and several basis, as provided for in section 507(b) of the Bankruptcy Code (the "ABL 507(b) Claim"), which ABL 507(b) Claim shall be payable from and have recourse to all Adequate Protection Collateral and all proceeds thereof; *provided* that such recourse shall be subject in all

respects to the Carve-Out and the Prepetition ABL Intercreditor Agreement. With respect to the ABL Priority Collateral, the ABL 507(b) Claim shall (subject and subordinate to the Carve-Out) be senior to all other claims of any kind and with respect to the Prepetition Priority Term Loan Collateral, the ABL 507(b) Claim shall be subject and subordinate only to the Carve-Out, the Priority Term Loan 507(b) Claim, the Existing Term Loan 507(b) Claim, the Prepetition Permitted Senior Liens, and the prepetition claims of the Prepetition Existing Term Loan Secured Parties and the Prepetition Priority Term Loan Secured Parties.

(c)    *Priority Term Loan Adequate Protection Liens*.  Subject to the immediately following sentence, the Prepetition Priority Term Loan Agent, for itself and for the benefit of the Prepetition Priority Term Loan Lenders, is hereby granted (effective and perfected upon the date of this Interim Order and ratified and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), on account of its Adequate Protection Claims, a valid, automatically perfected security interest in and lien upon (subject and subordinate to the Carve-Out) the Adequate Protection Collateral (the "Priority Term Loan Adequate Protection Liens").  The Priority Term Loan Adequate Protection Liens on Adequate Protection Collateral that falls within the scope of (i) CF Debt Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) shall (subject and subordinate to the Carve-Out) be senior to all other liens and (ii) ABL Priority Collateral shall (subject and subordinate to the Carve-Out) be subordinate only to the ABL Adequate Protection Liens and the Prepetition ABL Liens, subject to the Prepetition Intercreditor Agreements; *provided* that notwithstanding the foregoing, upon payment of all amounts required to be paid from the Funded Reserve Account hereunder, subject to the Prepetition Intercreditor Agreements, the Funded Reserve Account and any remaining funds therein shall constitute Collateral hereunder and the

Priority Term Loan Adequate Protection Liens shall attach thereto in accordance with the priorities set forth herein.

(d)    *Prepetition Priority Term Loan Secured Parties' Section 507(b) Claim*. The Prepetition Priority Term Loan Agent, for itself and for the benefit of the Prepetition Priority Term Loan Lenders, is hereby granted an allowed superpriority administrative expense claim (senior to all other administrative expense claims of any kind but subject and subordinate to the Carve-Out) on account of such Prepetition Priority Term Loan Secured Parties' Adequate Protection Claims as provided for in section 507(b) of the Bankruptcy Code (the "Priority Term Loan 507(b) Claim"), which Priority Term Loan 507(b) Claim shall be payable from and have recourse to all Adequate Protection Collateral and all proceeds thereof; *provided* that such recourse shall be subject in all respects to the Carve-Out and the Prepetition Intercreditor Agreements.

(e)    *Existing Term Loan Adequate Protection Liens*.  Subject to the immediately following sentence, the Prepetition Existing Term Loan Agent, for itself and for the benefit of the Prepetition Existing Term Loan Lenders, is hereby granted (effective and perfected upon the date of this Interim Order and ratified and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), on account of its Adequate Protection Claims, a valid, automatically perfected security interest in and lien upon (subject and subordinate to the Carve-Out) the Adequate Protection Collateral (the "Existing Term Loan Adequate Protection Liens," and together with the ABL Adequate Protection Liens and the Priority Term Loan Adequate Protection Liens, the "Adequate Protection Liens").  The Existing Term Loan Adequate Protection Liens on Adequate Protection Collateral that falls within the scope of (i) CF Debt Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) shall (subject and subordinate to the Carve-Out) be senior to all other liens, other than the Priority

Term Loan Adequate Protection Liens and the Prepetition Priority Term Loan Liens, in a manner consistent with the Prepetition Priority First Lien Intercreditor Agreement and (ii) ABL Priority Collateral shall (subject and subordinate to the Carve-Out) be subordinate only to the ABL Adequate Protection Liens and the Prepetition ABL Liens, in a manner consistent with the Prepetition ABL Intercreditor Agreement, and to the Priority Term Loan Adequate Protection Liens and the Prepetition Priority Term Loan Liens, in a manner consistent with the Prepetition Priority First Lien Intercreditor Agreement; *provided* that notwithstanding the foregoing, upon payment of all amounts required to be paid from the Funded Reserve Account hereunder, subject to the Prepetition Intercreditor Agreements, the Funded Reserve Account and any remaining funds therein shall constitute Collateral hereunder and the Existing Term Loan Adequate Protection Liens shall attach thereto in accordance with the priorities set forth herein.

(f)    *Prepetition Existing Term Loan Secured Parties' Section 507(b) Claim.* The Prepetition Existing Term Loan Agent, for itself and for the benefit of the Prepetition Existing Term Loan Lenders, is hereby granted an allowed superpriority administrative expense claim (senior to all other administrative expense claims of any kind but subject and subordinate to the Carve-Out) on account of such Prepetition Existing Term Loan Secured Parties' Adequate Protection Claims as provided for in section 507(b) of the Bankruptcy Code (the "Existing Term Loan 507(b) Claim", and, together with the Priority Term Loan 507(b) Claim and the ABL 507(b) Claim, the "507(b) Claims") which Existing Term Loan 507(b) Claim shall be payable from and have recourse to all Adequate Protection Collateral and all proceeds thereof; *provided* that such recourse shall be subject in all respects to the Carve-Out and the Prepetition Intercreditor Agreements.

(g)    *Prepetition ABL Secured Parties' Adequate Protection Fees and Expenses.* As further adequate protection, the Debtors shall provide the Prepetition ABL Agent, for the benefit of the Prepetition ABL Lenders, current cash payments of the reasonable and documented prepetition and postpetition fees and expenses of the Prepetition ABL Agent under the Prepetition ABL Credit Documents, including, but not limited to, the reasonable and documented fees and out-of-pocket expenses of primary, special, conflicts, and local counsel (in each applicable jurisdiction) and financial advisors, including the reasonable and documented fees and out-of-pocket expenses of Simpson Thacher & Bartlett LLP, as primary counsel, Potter Anderson & Corroon LLP, as local counsel, and Berkeley Research Group, LLC as financial advisor (the "ABL Adequate Protection Fees and Expenses"), subject to the review procedures set forth in paragraph 16 of this Interim Order.

(h)    *Prepetition Priority Term Loan Secured Parties' Adequate Protection Fees and Expenses.* As further adequate protection, the Debtors shall provide the Prepetition Priority Term Loan Agent, for the benefit of the Prepetition Priority Term Loan Lenders but subject in all respects to the Approved Budget, current cash payments of (A) the reasonable and documented prepetition and postpetition fees and expenses of the Prepetition Priority Term Loan Agent under the Prepetition Priority Term Loan Credit Documents, and (B) the reasonable and documented fees and out-of-pocket expenses of Pachulski Stang Ziehl & Jones LLP, as counsel to the holders (the "Majority Priority Term Loan Lenders") of a majority of the outstanding Prepetition Priority Term Loan Obligations (collectively, (A) and (B), the "Priority Term Loan Adequate Protection Fees and Expenses"), subject to the review procedures set forth in paragraph 16 of this Interim Order.

(i)     *Prepetition Existing Term Loan Secured Parties' Adequate Protection Fees and Expenses.*  As further adequate protection, the Debtors shall provide the Prepetition Existing Term Loan Agent, for the benefit of the Prepetition Existing Term Loan Lenders, but subject in all respects to the Approved Budget, current cash payments of (A) the reasonable and documented prepetition and postpetition fees and expenses of the Prepetition Existing Term Loan Agent under the Prepetition Existing Term Loan Credit Documents, and (B) the reasonable and documented fees and out-of-pocket expenses of Pachulski Stang Ziehl & Jones LLP, as counsel to the holders (the "Majority Existing Term Loan Lenders") of a majority of the outstanding Prepetition Existing Term Loan Obligations (collectively (A) and (B), the "Existing Term Loan Adequate Protection Fees and Expenses", and, together with the ABL Adequate Protection Fees and Expenses and the Priority Term Loan Adequate Protection Fees and Expenses, the "Adequate Protection Fees and Expenses"), subject to the review procedures set forth in paragraph 16 of this Interim Order.

(j)     *ABL Postpetition Interest.*  From and after entry of this Interim Order, the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Lenders, shall receive current cash payment during the Chapter 11 Cases of all accrued interest on the Prepetition ABL Obligations under the Prepetition ABL Credit Agreement as such interest becomes due and payable as set forth in the following sentence, during the Chapter 11 Cases at the applicable contractual default rate (including interest on interest) thereunder and in the amounts specified in the Prepetition ABL Credit Agreement.  The first such interest payment date shall be September 1, 2025, and thereafter, the first Business Day of every calendar month.

(k)     *ABL ABR Rollover.*  Notwithstanding anything to the contrary herein or in the Prepetition ABL Credit Agreement, upon the termination of any applicable Interest Period (as defined in the Prepetition ABL Credit Agreement), each Term SOFR Loan (as defined in the

Prepetition ABL Credit Agreement) shall automatically convert to and be deemed to be an ABR Loan (as defined in the Prepetition ABL Credit Agreement) for all purposes under the Prepetition ABL Credit Agreement; *provided* that no break funding payments shall be payable in connection therewith.

(l)     *ABL Adequate Protection Information Rights*.  The Debtors shall provide to the Prepetition ABL Agent all reporting required under the Prepetition ABL Credit Agreement consistent with the Debtors' prepetition practices and in accordance with its terms and any other reporting reasonably requested by the Prepetition ABL Agent or its advisors as soon as practicable after request, including daily balances of cash by legal entity (in form consistent with the reporting delivered to the Prepetition ABL Agent prior to the Petition Date) and any other reporting as reasonably requested by the Prepetition ABL Agent; *provided* that, the Debtors shall not be required to deliver audited financials or quarterly financial reporting.  Concurrently with such delivery to the Prepetition ABL Agent, the Debtors shall provide all such reporting in substantially similar form to the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, the Majority Priority Term Loan Lenders, the Majority Existing Term Loan Lenders, and the advisors to each of the foregoing.

(m)     *Term Loan Postpetition Interest*.  From and after entry of this Interim Order, the Prepetition Priority Term Loan Agent, on behalf of itself and the Prepetition Priority Term Loan Lenders, and the Prepetition Existing Term Loan Agent, on behalf of itself and the Prepetition Existing Term Loan Lenders, shall receive during the Chapter 11 Cases all accrued interest on the Prepetition Priority Term Loan Obligations and the Prepetition Existing Term Loan Obligations, as applicable, under the applicable Prepetition Credit Documents at the applicable

34

contractual default rate (including interest on interest) thereunder and in the amounts specified thereunder; *provided* that such interest shall be paid in kind.

        (n)    *Borrowing Base Reporting*.  The Debtors shall deliver to the Prepetition ABL Agent, Prepetition Priority Term Loan Agent, Prepetition Existing Term Loan Agent, the Majority Priority Term Loan Lenders, the Majority Existing Term Loan Lenders, and the advisors to each of the foregoing a Borrowing Base Certificate for the Borrowing Base (as defined in the Prepetition ABL Credit Agreement), with all the information required to be provided in connection therewith pursuant to the Prepetition ABL Credit Agreement, in each case in the format customarily delivered with each Borrowing Base Certificate delivered prior to the Petition Date, setting forth the Borrowing Base (as defined in the Prepetition ABL Credit Agreement) calculated as of the last day of the immediately preceding calendar week (with weeks, for purpose of the Borrowing Base Certificate, beginning on Sunday and ending on Saturday) on Thursday of each week commencing on August 7, 2025 for the week ending August 2, 2025, and each Thursday thereafter.

        (o)    *Asset Monetization Process Reporting.*  The Debtors and their advisors shall provide, in connection with any sale or monetization process conducted by the Debtors and/or their advisors (including by any liquidators hired by the Debtors) to the Prepetition ABL Agent, the Prepetition Priority Term Loan Agent, the Prepetition Existing Term Loan Agent, the Majority Priority Term Loan Lenders, the Majority Existing Term Loan Lenders, and the advisors to each of the foregoing:  (i) all material developments in connection with the efforts of the Debtors, their advisors and any liquidators to sell some, all or substantially all of the Debtors' assets as promptly as possible, (ii) on a weekly basis, reasonably detailed updates on the progress of any such sale, which may be in the form of a weekly status update call, (iii) access to any data room, (iv) copies

of all reports, analyses, non-legally privileged materials (including, without limitation, any and all confidential memoranda or other work product provided by the investment banker or any liquidator in connection with the sales process), and (v) within two (2) Business Days after receipt of any bona fide bid or indication of interest ("IOI"), a summary of such of such bid or IOI (including identity of the bidder) and, if applicable, any documentation, letter or agreement accompanying such bid or IOI, all of which shall be provided on a "Professional Eyes Only" basis; *provided* that the aforementioned reporting obligations shall not apply as to any applicable Prepetition Secured Party with respect to any assets for which such Prepetition Secured Party is known to be an interested potential bidder.

(p)    *Maintenance of Collateral.*    The Debtors shall continue to maintain and insure the Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Credit Documents.

(q)    *Adequate Protection Milestones.*    The Prepetition Secured Parties are hereby entitled to performance of, and the Debtors shall satisfy, those certain case milestones set forth in Schedule 2 hereto (the "Adequate Protection Milestones").

6.    *Budget*.

(a)    *Budget Reporting.*    The Debtors shall deliver to the Directing Cash Collateral Agent[5] and, for information purposes only, to each other secured debt agent or trustee the following:  no later than every fourth Thursday (but if such Thursday is not a Business Day, the next Business Day), beginning with Thursday, August 28, 2025, a rolling updated 13-week

---

[5]    "Directing Cash Collateral Agent" shall mean the Prepetition ABL Agent or, following the indefeasible payment in full in cash and cash collateralization (as applicable) of all of the Prepetition ABL Obligations, the Prepetition Priority Term Loan Agent or, following the indefeasible payment in cash of all of the Prepetition Priority Term Loan Obligations, the Prepetition Existing Term Loan Agent.

cash flow forecast (a "<u>Proposed Budget</u>") (which shall, for the avoidance of doubt, be in the same form, and contain all of the same line items as the Initial Budget, including an updated Case Administration Reserve Amount) setting forth all projected cash receipts and disbursements on a line item and aggregate weekly basis for the next 13-week period.  The Proposed Budget (including any subsequent revisions to any such Proposed Budget) will become the Approved Budget with respect to the thirteen-week (13-week) period (such period as set forth in the Approved Budget in effect at such time, the "<u>Budget Period</u>") covered thereof effective five (5) Business Days after such submission (such date, the "<u>Budget Transition Date</u>") unless the Debtors receive a written objection from the Directing Cash Collateral Agent (prior to repayment in full of the Prepetition ABL Obligations, acting at the direction of the requisite lenders under the Prepetition ABL Credit Agreement (the "<u>Prepetition ABL Required Lenders</u>")) prior to the Budget Transition Date.  In the event the Directing Cash Collateral Agent (prior to repayment in full of the Prepetition ABL Obligations, acting at the direction of the Prepetition ABL Required Lenders) timely objects to a Proposed Budget, the prior Approved Budget shall remain in full force and effect until the Directing Cash Collateral Agent approves any Proposed Budget (with email from the Directing Cash Collateral Agent's counsel to the Debtors' counsel being sufficient).[6]

(b)    *Variance Testing; Permitted Variances*.  The Debtors shall at all times use Cash Collateral solely for the purposes included in the Approved Budget.  By not later than Thursday of the second full week after the Petition Date, and on each Thursday thereafter (or, if such Thursday not a Business Day, then the immediately succeeding Business Day), the Debtors shall deliver to the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the

---

[6]    With respect to the Prepetition ABL Agent, the approval of any Proposed Budget or any modifications to any Approved Budget, as well as waiving any Cash Collateral Termination Event resulting from, among other things, any Variance Test showing an adverse variance exceeding a Permitted Deviation shall, in each case, be subject to the prior approval of such budget (email being sufficient) by the Prepetition ABL Required Lenders.

Prepetition Priority Term Loan Agent, the Majority Priority Term Loan Lenders, the Majority Existing Term Loan Lenders, the advisors to each of the foregoing, and the U.S. Trustee, a variance report for the applicable Testing Period (as defined below) in form and detail reasonably acceptable to the Directing Cash Collateral Agent, which shall be no less detailed than any other cash flow reporting provided to the Directing Cash Collateral Agent (a "Variance Test"), showing comparisons of (a) aggregate cash receipts for the Testing Period, compared to the aggregate projected cash receipts of the Debtors for such Testing Period as set forth in the Approved Budget and (b) aggregate and line item actual cash disbursements of the Debtors for such Testing Period compared to the projected cumulative cash disbursements for such Testing Period as set forth in the Approved Budget (any such difference on an aggregate basis, a "Disbursements Variance"). Each Variance Test shall indicate whether there are any adverse variances that exceed the Permitted Deviation (as defined below) and shall provide a written explanation for such variances. "Permitted Deviation" shall mean (a) with respect to the aggregate Variance Test for any applicable Testing Period, based on receipts solely with respect to the line items reflecting receipts of the Store Closing Sales (as defined in the Agency Agreement), an aggregate unfavorable variance equal to or less than 12.5% (the "Receipts Permitted Deviation") and (b) with respect to the aggregate Variance Test for any applicable Testing Period based on disbursements, an aggregate unfavorable variance equal to or less than 10% (the "Disbursements Permitted Deviation").  It shall be a condition precedent to the use of Cash Collateral that the Debtors shall have delivered an Approved Budget in accordance with paragraph 6(a).  A Variance Test showing noncompliance with the Permitted Deviations, shall constitute a Cash Collateral Termination Event (as defined below) hereunder unless waived by the Directing Cash Collateral Agent (which waiver shall not require this Court's authorization or

notice).  A "Testing Period" means each rolling cumulative four-week period beginning the full week ending August 30, 2025; *provided* that the initial Testing Period shall be the prior rolling cumulative two-week period ending the week ending August 16, 2025, which initial Variance Test shall be delivered August 21, 2025, and the next Testing Period shall be the prior rolling cumulative three-week period ending the week ended August 23, 2025, which Variance Test shall be delivered August 28, 2025.

　　　　7.　　　*Perfection of Adequate Protection Liens.*

　　　　(a)　　　This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the Prepetition Liens, the Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, execution, filing, registration, recording, continuation, or possession.  Without in any way limiting the automatically valid effective perfection of the Adequate Protection Liens granted pursuant to paragraph 5 hereof, and the preceding sentence, the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Prepetition Secured Parties (as applicable), as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, continuation statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of securities, or to amend or modify security documents, or enter into intercreditor agreements, or to subordinate existing liens and any other similar action or action in connection therewith in a manner not inconsistent herewith or take any other action in order to document, validate and perfect the liens and security interests granted to them hereunder ("Perfection Actions").  Whether or not the Prepetition Secured Parties shall take such Perfection

Actions, the liens and security interests granted hereunder shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order.

(b)    A certified copy of this Interim Order may, in the discretion of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, or the Prepetition Priority Term Loan Agent be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept a certified copy of this Interim Order for filing and/or recording, as applicable.  The Automatic Stay shall be modified to the extent necessary to permit the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, and the Prepetition Priority Term Loan Agent to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

8.    *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided* that any of the Prepetition Secured Parties (subject to any applicable contractual limitations on such rights in the Prepetition Intercreditor Agreements or otherwise) may request further or different adequate protection and the Debtors or any other party in interest may contest any such request.

9.    *Carve-Out.*

(a)    As used in this Interim Order, the term "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate, if any, pursuant to

31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable and documented fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, final order or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees")[7] incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and any Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first Business Day following delivery by the Directing Cash Collateral Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,000,000 incurred after the first Business Day following delivery by the Directing Cash Collateral Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, final order or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Directing Cash Collateral Agent to the Debtors and their lead restructuring counsel (with courtesy copies to the U.S. Trustee and counsel to any Creditors' Committee), which notice may be delivered following the occurrence and during the continuation of a Cash Collateral Termination Event (as defined below) and upon termination

---

[7]    Upon entry of this Interim Order, the Debtors shall fund into the Funded Reserve Account from Cash on hand fees in an amount and on conditions, if any, to be determined for the benefit of Houlihan Lokey Capital, Inc.

of the Debtors' right to use Cash Collateral by the Prepetition Secured Parties, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

       (b)    <u>Fee Estimates</u>.  Not later than 7:00 p.m. New York time on the third Business Day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the unpaid amount of fees and expenses (collectively, "<u>Estimated Fees and Expenses</u>") incurred during the preceding week by such Professional Person (through Saturday of such week, the "<u>Calculation Date</u>"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "<u>Weekly Statement</u>"); *provided* that within one (1) Business Day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional Weekly Statement (the "<u>Final Statement</u>") setting forth a good-faith estimate of unpaid amount of fees and expenses incurred during the period commencing on the calendar day after the prior Calculation Date and concluding on the Termination Declaration Date (and the Debtors shall cause each such Weekly Statement or Final Statement to be delivered promptly to the Directing Cash Collateral Agent).  If any Professional Person fails to deliver a Weekly Statement or Final Statement within two (2) calendar days after such Weekly Statement or Final Statement is due, such Professional Person's entitlement to any funds in the Pre-Carve Out Trigger Notice Reserve (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement or Final Statement covering such period shall be limited to the aggregate unpaid amount of

Allowed Professional Fees included in the Approved Budget for such period for such Professional Person, unless otherwise ordered by the Court.

        (c)    <u>Carve-Out Reserves</u>.

        (i)    Commencing on August 13, 2025, and on or before the Thursday of each week thereafter until a Termination Declaration Date, the Debtors shall, subject to the Approved Budget, utilize all cash on hand as of such date to fund a reserve in an amount equal to the sum of (A) the greater of (1) the aggregate unpaid amount of all Estimated Fees and Expenses of Debtor Professionals reflected in the Weekly Statements delivered on the immediately prior Wednesday (or next succeeding Business Day) to the Debtors and the Directing Cash Collateral Agent and (2) the aggregate amount of unpaid Allowed Professional Fees of Debtors Professionals contemplated to be incurred in the Approved Budget during the applicable time period, *plus* (B) the lesser of (1) the aggregate unpaid amount of all Estimated Fees and Expenses of Committee Professionals reflected in the Weekly Statements delivered on the immediately prior Wednesday (or next succeeding Business Day) to the Debtors and the Directing Cash Collateral Agent and (2) the aggregate amount of unpaid Allowed Professional Fees of Committee Professionals contemplated to be incurred in the Approved Budget during the applicable time period.  The Debtors shall deposit and hold such amounts in a segregated account maintained by the Debtors in trust at an authorized depository under the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* for the U.S. Trustee (the "<u>Funded Reserve Account</u>") to pay such Allowed Professional Fees (the "<u>Funded Reserves</u>") prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Funded Reserve Account.

(ii)     On the day on which a Carve Out Trigger Notice is given by the Directing Cash Collateral Agent to the Debtors (the "Termination Declaration Date"), the Debtors shall utilize the Funded Reserve Account and all available cash on hand as of such date, to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees *plus* the amounts set forth in paragraph 9(a)(i)-(ii).  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims (including, for the avoidance of doubt, any Adequate Protection Obligations or Prepetition Secured Obligations).

(iii)     On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize cash in the Funded Reserve Account and all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve-Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Secured Obligations in accordance with the terms of the Prepetition Intercreditor Agreements, unless the Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of

44

Carve-Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Directing Cash Collateral Agent for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the Prepetition Credit Documents, or this Interim Order, if either of the Carve-Out Reserves is not funded in full in the amounts set forth in this paragraph 9, then, any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve-Out Reserves, up to the applicable amount set forth in this paragraph 9, prior to making any payments on account of the Prepetition Secured Obligations or to any of the Debtors' creditors, as applicable.  Notwithstanding anything to the contrary in the Prepetition Credit Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded, but the Prepetition Secured Parties shall have a security interest in any residual interest in the Carve-Out Reserves, and any excess shall be paid to satisfy the Prepetition Secured Obligations in accordance with the terms of the Prepetition Intercreditor Agreements and the Prepetition Credit Documents.  Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve-Out Reserves shall not constitute an advance or extension of credit under the Prepetition Credit Documents or increase or reduce the obligations under the Prepetition Credit Documents, (ii) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way

shall the Initial Budget, Approved Budget, Carve-Out, Post-Carve Out Trigger Notice Cap,
Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of
the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and
notwithstanding anything to the contrary in this Interim Order or in any Prepetition Credit
Documents, the Carve-Out shall be senior to all liens and claims securing the Prepetition
Collateral, the Adequate Protection Liens, the Adequate Protection Claims, the 507(b) Claims, and
any and all other forms of adequate protection, liens, or claims securing the obligations under the
Prepetition Credit Documents.

(d)      <u>Payment of Allowed Professional Fees Prior to the Termination Declaration
Date</u>.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration
Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

(e)      <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the
Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or
disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any
successor cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or
otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to pay
compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the
Debtors have sufficient funds to pay such compensation or reimbursement.

(f)      <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Any
payment or reimbursement made on or after the occurrence of the Termination Declaration Date
in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a
dollar-for-dollar basis.

46

10.    *Protection of Prepetition Secured Parties' Rights.*

(a)    Notwithstanding anything to the contrary herein, prior to the payment in full, in cash of the Prepetition Secured Obligations (including the 507(b) Claims and cash collateralization of all Prepetition Letters of Credit), the rights of the Prepetition Secured Parties shall be subject to the terms of the Prepetition Intercreditor Agreements.

(b)    Upon the occurrence of any of the below events (a "Cash Collateral Termination Event"), the Directing Cash Collateral Agent on not less than five (5) Business Days' notice (a "Default Notice") to lead restructuring counsel to the Debtors, lead restructuring counsel to the Prepetition ABL Agent, lead restructuring counsel to the Prepetition Existing Term Loan Agent, lead restructuring counsel to the Prepetition Priority Term Loan Agent, counsel to the Majority Priority Term Loan Lenders, counsel to the Majority Existing Term Loan Lenders, counsel to the Creditors' Committee (if any), and the U.S. Trustee (the "Remedies Notice Parties") (such five (5) Business Day period, the "Cash Collateral Remedies Notice Period"), and unless the Court orders otherwise (*provided* that during the Cash Collateral Remedies Notice Period, the Debtors, the Creditors' Committee (if appointed) and/or any party in interest shall be entitled to seek an emergency hearing (with the Directing Cash Collateral Agent being deemed to consent to such emergency hearing) with the Court for the purpose of contesting whether, in fact, a Cash Collateral Termination Event has occurred and is continuing or to obtain non-consensual use of Cash Collateral, and *provided further* that if a request for any such hearing is made prior to the end of the Cash Collateral Remedies Notice Period, the Cash Collateral Remedies Notice Period, the Cash Collateral Remedies Notice Period shall be continued until the Court hears and rules with respect thereto), the Directing Cash Collateral Agent may terminate its consent to the Debtors' use of Cash Collateral:

- The failure to make any payment pursuant to paragraph 4 or 5 hereof;

- The filing of any motion or pleading by the Debtors to stay, vacate, reverse, amend, or modify the Interim Order or Final Order in a manner adverse to the Prepetition Secured Parties;

- The Court shall have entered an order, or the Debtors shall have filed a motion or application seeking an order, or the Debtors fail to timely contest a motion or application filed by another party seeking an order, (i) converting one or more of the Chapter 11 Cases of a Debtor to a case under chapter 7 of the Bankruptcy Code, (ii) appointing an examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code, a trustee, or a responsible officer, in one or more of the Chapter 11 Cases of a Debtor, or (iii) dismissing the Chapter 11 Cases;

- The entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors;

- The Debtors shall attempt to invalidate, reduce or otherwise impair the Prepetition Secured Obligations;

- The Debtors lose the exclusive right to file and solicit acceptances of a chapter 11 plan;

- The creation of any liens on Collateral that are *pari passu* or senior to the liens in favor of the applicable Prepetition Secured Parties (except the Carve-Out);

- The Debtors' failure to comply with any Adequate Protection Milestone set forth on **Schedule 2** hereto, to the extent such Adequate Protection Milestone is not extended or waived in accordance with **Schedule 2** hereto;

- The effective date of any chapter 11 plan;

- The conversion of any of the Chapter 11 Cases to a case under chapter 7;

- The failure to (i) deliver any Borrowing Base Certificate (as defined herein) when required, (ii) provide daily balances of cash by legal entity (in form consistent with the reporting delivered by to the Prepetition ABL Agent prior to the Petition Date), or (iii) the failure to make any other adequate protection payments required to be made under the Interim Order or Final Order to the Prepetition Secured Parties, in each case after three (3) Business Days' notice and an opportunity to cure;

- The lifting of the Automatic Stay with respect to or the exercise of any remedies against any portion of the Collateral with a fair value in excess of $1,000,000;

- The expenditure by any of the Debtors of Cash Collateral other than in accordance with the Approved Budget (subject to the Permitted Deviations) (including by funding any expenditures prior to their budgeted time for payment) or the failure to provide any of the reports and other information required by the paragraph titled "Budget Reporting" of this Interim Order;

- A failure by the Debtors of any Variance Test (subject to Permitted Deviations);

- A material breach by the Debtors of the Interim Order (*provided* that the terms and provisions with respect to adequate protection shall be deemed material);

- The stay, reversal, vacatur, rescission or other modification of the Interim Order or Final Order in a manner materially adverse to the Prepetition Secured Parties;

- Any of the Debtors file any motions, pleadings, briefs, or support any other parties in furtherance of any event that would constitute a Cash Collateral Termination Event;

- The earlier of (i) the sale of all Collateral, whether through a going-concern sale, liquidation, or otherwise, and (ii) October 3, 2025, which may be extended by the Directing Cash Collateral Agent in its sole discretion; and

- Any bidding procedures motion, bidding procedures order, de minimis assets procedures motion, de minimis asset procedures order, stalking horse bid, asset purchase agreements, sale orders and all other related documents pursuant to which the Debtors may sell assets pursuant to Section 363 of the Bankruptcy Code outside of the ordinary course of business (the "Sale Documents") or agency agreement of any liquidation firm in connection with a liquidation of the Debtors (the "Agency Agreement") are not in form and substance acceptable to the Prepetition ABL Required Lenders, or the Sale Documents or such Agency Agreement are modified in any material manner without the prior written consent of the Directing Cash Collateral Agent;

it being understood that each Cash Collateral Termination Event may be waived, extended, or consented to, as applicable, by written consent (email being sufficient) by the Directing Cash Collateral Agent in its sole discretion and no approval of, or notice to, this Court shall be required for any waivers or extensions provided by the Directing Cash Collateral Agent under this paragraph 10.

11.     Subject to the Cash Collateral Remedies Notice Period, upon the occurrence of a Cash Collateral Termination Event, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, and the Prepetition Secured Parties may, subject to the terms of the Prepetition Intercreditor Agreements and the Carve-Out, exercise the rights and remedies available under the Prepetition Credit Documents, this Interim Order, or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Collateral in order to collect the Adequate Protection Obligations or the Prepetition Secured

Obligations.  The Automatic Stay is hereby deemed modified and vacated to the extent necessary to permit (i) upon the occurrence and during the continuance of a Cash Collateral Termination Event, the Directing Cash Collateral Agent to (x) deliver a Default Notice and (y) subject to the Debtors' permitted uses of Cash Collateral during the Cash Collateral Remedies Notice Period, terminate any use of Cash Collateral and (ii) such other actions as described in the foregoing, provided that during the Cash Collateral Remedies Notice Period, unless the Court orders otherwise, the Automatic Stay (to the extent applicable) shall remain in effect.

12.    *Limitation on Charging Expenses Against Collateral*.  Except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any successor cases to these Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral (including Cash Collateral) or Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, or the Prepetition Priority Term Loan Agent, as applicable, and no consent shall be implied from any other action, inaction or acquiescence by the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, or the Prepetition Secured Parties, and nothing contained in this Interim Order shall be deemed to be a consent by the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent or the Prepetition Secured Parties to any charge, lien, assessment or claims against the Collateral under

section 506(c) of the Bankruptcy Code or otherwise; *provided* that this waiver shall be without prejudice to the Final Order with respect to the period after entry of the Final Order.

13.     *No Marshaling*.  In no event shall the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral, the Prepetition Secured Debt, or the Prepetition Collateral.  Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to each of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent or the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any Prepetition Collateral; *provided* that this waiver shall be without prejudice to the Final Order with respect to the period after entry of the Final Order.

14.     *Payments Free and Clear*.  Any and all payments or proceeds remitted to the Prepetition Secured Parties pursuant to the provisions of this Interim Order or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtors.

15.     *Preservation of Rights Granted Under this Interim Order.*

(a)     Other than (i) the Carve-Out and (ii) other claims and liens expressly granted or permitted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the Prepetition Secured Parties shall be permitted while any of the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in or permitted under this Interim Order, the Adequate Protection Liens shall

51

not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board, or court for any liability of the Debtors; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Debtors.

(b)      Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting these Chapter 11 Cases to cases under chapter 7:  (i) the 507(b) Claims and the Adequate Protection Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations shall have been paid in full (and Adequate Protection Claims and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Interim Order, including with respect to the Carve-Out, shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)      If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, or the Prepetition Priority Term Loan Agent, as applicable, of the effective date of such

reversal, modification, vacatur, or stay; or (ii) the validity, priority or enforceability of the Adequate Protection Liens, or the Carve-Out. Notwithstanding any such reversal, modification, vacatur, or stay of any use of Cash Collateral, any Adequate Protection Obligations or Adequate Protection Liens incurred by the Debtors and granted to the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, or the Prepetition Priority Term Loan Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim Order, and the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, and the other Prepetition Secured Parties shall be entitled to, and are hereby granted, all the rights, remedies, privileges, and benefits arising under section 363(m) of the Bankruptcy Code and this Interim Order with respect to all uses of Cash Collateral and Adequate Protection Obligations.

(d)     Except as expressly provided in this Interim Order, the Adequate Protection Liens, the Adequate Protection Obligations, the Adequate Protection Claims and all other rights and remedies of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, and the other Prepetition Secured Parties granted by the provisions of this Interim Order and the Carve-Out shall survive, and shall not be modified, impaired or discharged by:  the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, or terminating the joint administration of these Chapter 11 Cases or by any other act or omission;  the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code;  the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Prepetition Secured Parties have waived any

53

discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Interim Order shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent and the other Prepetition Secured Parties granted by the provisions of this Interim Order shall continue in full force and effect until the Adequate Protection Claims are indefeasibly paid in full in cash, as set forth herein (and in the case of rights and remedies of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, and the other Prepetition Secured Parties, shall remain in full force and effect thereafter, subject to the terms of this Interim Order), and the Carve-Out shall continue in full force and effect.

(e)      Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (i) the Prepetition ABL Lenders' right to seek any other or supplemental relief in respect of the Debtors (including, the right to seek additional or different adequate protection), or (ii) any rights of the Prepetition ABL Lenders under the Bankruptcy Code or under non-bankruptcy law to (a) request modification of the Automatic Stay, (b) request dismissal of any of the Chapter 11 Cases or successor cases, (c) request conversion of any of the Chapter 11 Cases to cases under Chapter 7, (d) seek appointment of a chapter 11 trustee or examiner with expanded powers, (e) seek an injunction, (f) oppose any request for use of Cash Collateral, (g) object to any sale of assets, or (h) propose a chapter 11 plan. All rights, claims, and privileges (whether legal, equitable, or otherwise) of the Prepetition ABL Lenders are fully preserved.

54

16.    *Payment of Fees and Expenses*.    The Debtors are authorized to and shall pay the Adequate Protection Fees and Expenses.    Subject to the review procedures set forth in this paragraph 16, payment of all Adequate Protection Fees and Expenses shall not be subject to allowance or review by the Court.    Professionals for the Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines, however, any time that such professionals seek payment of fees and expenses from the Debtors prior to confirmation of a chapter 11 plan, each professional shall provide summary copies of its invoices including aggregate amounts of fees and expenses and total amount of time on a per-professional basis (which shall not be required to contain time detail and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law) to the Debtors, lead restructuring counsel to the Prepetition ABL Agent, lead restructuring counsel to the Prepetition Existing Term Loan Agent, lead restructuring counsel to the Prepetition Priority Term Loan Agent, counsel for the Creditors' Committee (if any), and the U.S. Trustee (together, the "Review Parties").    Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within seven (7) calendar days after the receipt by the Review Parties (the "Review Period").    If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the end date of the Review Period, the Debtors shall pay such invoices within five (5) Business Days of the end of the Review Period.    If an objection to a professional's invoice is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice without

the necessity of filing formal fee applications, regardless of whether such amounts arose or were incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the date of entry of this Interim Order any Adequate Protection Fees and Expenses incurred on or prior to such date without the need for any professional engaged by, or on behalf of, the Prepetition Secured Parties to first deliver a copy of its invoice or other supporting documentation to the Review Parties (other than the Debtors). No attorney or advisor to Prepetition Secured Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to Prepetition Secured Parties in connection with or with respect to these Chapter 11 Cases, are hereby approved in full and shall not be subject to recharacterization, avoidance, subordination, disgorgement, or any similar form of recovery by the Debtors or any other person.

17. *Letters of Credit*. The Debtors shall be authorized to maintain Prepetition Letters of Credit prior to the Petition Date on an uninterrupted basis in accordance with the same practices and procedures as were in effect prior to the Petition Date in each case subject to the terms of the Prepetition ABL Credit Agreement, and to take all actions reasonably appropriate with respect thereto; *provided* that the Debtors shall collateralize the Prepetition Letters of Credit in accordance with the procedures set forth in the Prepetition ABL Credit Agreement and on terms and conditions otherwise satisfactory to the Prepetition ABL Agent in its reasonable discretion after the repayment in full of the outstanding Prepetition ABL Obligations, which Prepetition Letters of Credit shall be cash collateralized at 105%; *provided*, *further*, the Debtors shall not issue any Prepetition

Letters of Credit on a postpetition basis without the prior written consent of the Prepetition Secured Parties.

18.    *Effect of Stipulations on Third Parties*.    The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon the Debtors in all circumstances and for all purposes.    The Debtors' stipulations, admissions, agreements, and releases contained in this Interim Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases (including any Creditors' Committee) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless:  (a) such committee or any other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) sixty (60) calendar days after the Petition Date; *provided* that, if the Chapter 11 Cases are converted to chapter 7 and a chapter 7 trustee or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period, then the Challenge Period for any such chapter 7 trustee or chapter 11 trustee shall be extended (solely as to such chapter 7 trustee and chapter 11 trustee) to the date that is the later of (1) sixty (60) calendar days after the Petition Date and (2) thirty (30) days after the appointment of such chapter 7 trustee or chapter 11 trustee; and (ii) any such later date as (w) has been agreed to by the Prepetition ABL Agent with respect to the Prepetition ABL Obligations or the Prepetition ABL Liens, (x) has been agreed to by the Prepetition Existing Term Loan Agent with respect to the Prepetition Existing Term Loan Obligations or the Prepetition Existing Term Loan Liens,

(y) has been agreed to by the Prepetition Priority Term Loan Agent with respect to the Prepetition Priority Term Loan Obligations or the Prepetition Priority Term Loan Liens, or (z) has been ordered by the Court for cause upon a motion filed and served within any applicable period (the time period established by the foregoing clauses (i)-(ii), the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Debt or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against the Prepetition Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each, a "Representative" and, collectively, the "Representatives") in connection with matters related to the Prepetition Credit Documents, the Prepetition Secured Debt, the Prepetition Liens, and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided, however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (1) the Debtors' stipulations, admissions, agreements, and releases contained in this Interim Order shall be binding on all parties in interest; (2) the obligations of the Debtors under the Prepetition Credit Documents, including the

Prepetition Secured Debt, shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except under the Prepetition Intercreditor Agreements), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in the Chapter 11 Cases, any subsequent chapter 7 case(s), or otherwise; (3) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual (other than pursuant to the Prepetition Intercreditor Agreements), or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their

59

Representatives arising out of or relating to any of the Debtors, the Prepetition Credit Documents, the Prepetition Secured Debt, the Prepetition Liens and the Prepetition Collateral shall be deemed forever waived, released, and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements, and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each other statutory or nonstatutory committee appointed or formed in the Chapter 11 Cases and on any other person or entity.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Credit Documents, the Prepetition Secured Debt, or the Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay the Chapter 11 Cases or confirmation of any plan of reorganization.

19.    *Limitation on Use of Collateral.*  Notwithstanding any other provision of this Interim Order or any other order entered by the Court, no Collateral (including Cash Collateral) or any portion of the Carve-Out, may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party, in connection with (a) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the Prepetition Secured Parties, or their respective predecessors-in-interest, agents, affiliates, Representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the, Prepetition Secured Debt, and/or the Adequate Protection Obligations, and Adequate Protection Liens granted to the Prepetition Secured Parties, as applicable, or (ii) challenging the amount, validity, perfection, priority, or enforceability of or

asserting any defense, counterclaim, or offset with respect to the Prepetition Secured Debt and/or the liens, claims, rights, or security interests securing or supporting the Prepetition Secured Debt or Adequate Protection Claims granted under this Interim Order, the Final Order, or the Prepetition Credit Documents in respect of the Prepetition Secured Debt, including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise (provided that, notwithstanding anything to the contrary herein, the Collateral (including Cash Collateral) may be used by the Creditors' Committee to investigate but not to prosecute (A) the claims and liens of the Prepetition Secured Parties and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties, up to an aggregate cap for both (A) and (B) of no more than $50,000), (b) attempts to prevent, hinder, or otherwise delay or interfere with the Prepetition ABL Agent's, the Prepetition Existing Term Loan Agent's, the Prepetition Priority Term Loan Agent's, or the Prepetition Secured Parties', as applicable, enforcement or realization on the Prepetition Secured Debt, Prepetition Collateral, and the liens, claims, and rights granted to such parties under the Interim Order or Final Order, as applicable, each in accordance with the Prepetition Credit Documents and this Interim Order; (c) attempts to seek to modify any of the rights and remedies granted to the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, or the Prepetition Secured Parties, under this Interim Order or the Prepetition Credit Documents, as applicable, other than in accordance with this Interim Order; (d) to apply to the Court for authority to approve superpriority claims or grant liens or security interests in the Collateral or any portion thereof that are senior to, or on parity with, the Adequate Protection Liens and 507(b) Claims granted to the Prepetition Secured Parties; or (e) to pay or to seek to pay any amount on account of any claims arising prior to the Petition

Date unless such payments are approved or authorized by the Court, agreed to in writing by the Directing Cash Collateral Agent, or expressly permitted under this Interim Order (including the Approved Budget, subject to permitted variances), in each case unless all Prepetition Secured Debt, Adequate Protection Obligations, and claims granted to the each Prepetition Secured Party under this Interim Order, have been paid in full in cash (including the cash collateralization of any letters of credit).  For the avoidance of doubt, this paragraph 19 shall not limit the Debtors' right to use Collateral to contest that a Cash Collateral Termination Event has occurred hereunder pursuant to and consistent with paragraph 10 of this Interim Order.

20.     *Indemnification*.  The Prepetition Secured Parties have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the use of Cash Collateral, including in respect of the granting of the Adequate Protection Liens, any challenges or objections to the use of Cash Collateral and all other documents related to and all transactions contemplated by the foregoing, Accordingly, without limitation to any other right to indemnification, the Prepetition Secured Parties shall be and hereby are indemnified (as applicable) as provided in the Prepetition Credit Documents.  No exception or defense in contract, law, or equity exists as of the date of this Interim Order to any obligation set forth, as the case may be, in this paragraph 20, or in the Prepetition Credit Documents to indemnify and/or hold harmless the Prepetition Secured Parties, as the case may be, and any such defenses are hereby waived.

21.     *Interim Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order (including, but not limited to, with respect to the Adequate Protection Obligations) or the Prepetition Credit Documents, the provisions of this Interim Order shall govern.

Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order and the Approved Budget (subject to permitted variances).

22. *Binding Effect; Successors and Assigns*.  The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, the other Prepetition Secured Parties, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, the other Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent and the other Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

23. *Exculpation*.  Nothing in this Interim Order, the Prepetition Credit Documents, or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any Prepetition Secured Party any liability

for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.  The Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Adequate Protection Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof; or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the Adequate Protection Collateral or Prepetition Collateral shall be borne by the Debtors.

24.    *Limitation of Liability*.  In determining to permit the use of the Prepetition Collateral (including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the Prepetition Credit Documents, none of the Prepetition Secured Parties shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code).  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent or other Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

25.    *Master Proofs of Claim.*  The Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent and/or any other Prepetition Secured Parties shall not be required to file proofs of claim in the Chapter 11 Cases or any successor case in order to assert claims on behalf of themselves or the Prepetition Secured Parties for payment of the Prepetition Secured Debt arising under the Prepetition Credit Documents, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts under the Prepetition Credit Documents.  The statements of claim in respect of such indebtedness set forth in this Interim Order are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.  However, in order to facilitate the processing of claims, each of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent and the Prepetition Priority Term Loan Agent is authorized, but not directed or required, to file in the Debtors' lead Chapter 11 Case *In re Claire's Holdings LLC*, Case No. 23-11454, a master proof of claim on behalf of its respective Prepetition Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition Credit Documents and hereunder (each, a "Master Proof of Claim") against each of the Debtors.  Upon the filing of a Master Proof of Claim by either the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, or the Prepetition Priority Term Loan Agent, as applicable, it shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Credit Documents, and the claim of each applicable Prepetition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if it had filed a separate proof of claim in each of these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party

65

or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among the holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph 25 and each Master Proof of Claim is intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to each of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, or the Prepetition Priority Term Loan Agent, as applicable.

26.    *Credit Bidding*.  Subject to section 363(k) of the Bankruptcy Code, the lien priorities set forth herein and any successful Challenge, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent and the Prepetition Priority Term Loan Agent shall have the right, consistent with the provisions of the Prepetition Credit Documents (and subject to the provisions of the Prepetition Intercreditor Agreements), as applicable, to credit bid up to the full amount of the applicable Prepetition Secured Obligations and the Adequate Protection Obligations in any sale of the Prepetition Collateral or Adequate Protection Collateral, as applicable, in each case outside the ordinary course of business, without the need for further Court order authorizing the same and whether any such sale is effectuated through sections 363(k), 1123, or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, in each case unless the Court for cause orders otherwise; *provided* that the amount of any Adequate Protection Obligations shall have been determined by an order of the Court prior to the submission of any credit bid including such obligations.

27.     *Effectiveness*.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

28.     *Governing Order*.   Notwithstanding the relief granted in any other order by this Court, (i) all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to this Interim Order, including compliance with the Approved Budget and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency between the terms of such other order and this Interim Order, this Interim Order shall control, in each case, except to the extent expressly provided otherwise in such other order.  For the avoidance of doubt, nothing herein abrogates or modifies the Prepetition Secured Parties' rights with respect to each other under the Prepetition Intercreditor Agreements.

29.     *Headings*.   Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

30.     *Bankruptcy Rules*. The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

31.     *No Third-Party Rights*.   Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

32.     *Necessary Action*.   The Debtors and the Prepetition Secured Parties are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Interim Order.  In addition, the Automatic Stay is modified to permit affiliates of the Debtors who are not

debtors in these Chapter 11 cases to take all actions as are necessary or appropriate to implement the terms of this Interim Order.

33.    *Retention of Jurisdiction*.    The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

34.    *Final Hearing*.    A final hearing to consider the relief requested in the Motion shall be held on _____ (prevailing Eastern Time) and any objections or responses to the Motion shall be filed on or prior to _____ (prevailing Eastern Time).

35.    *Objections*.    Any party in interest objecting to the relief sought at the Final Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be served upon (a) the Debtors, Claire's Holdings LLC, 2400 West Central Road, Hoffman Estates, Illinois 60192, Attn.: Brendan McKeough, Executive Vice President, Chief Legal Officer, and Secretary (brendan.mckeough@claires.com) and 3 SW 129th Avenue, Pembroke Pines, Florida 33027, Attn: Michele Reilly, Assistant Secretary (michele.reilly@claires.com); (b) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Allyson B. Smith (allyson.smith@kirkland.com) and 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Alexandra F. Schwarzman, P.C. (alexandra.schwarzman@kirkland.com) and Robert A. Jacobson (rob.jacobson@kirkland.com) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Attn: Paul N. Heath (heath@rlf.com) and Zachary I. Shapiro (shapiro@rlf.com); (c) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Benjamin A. Hackman

(Benjamin.a.hackman@usdoj.gov); (d) counsel to the Majority Priority Term Loan Lenders and the Majority Existing Term Loan Lenders, Pachulski Stang Ziehl & Jones, LLP, Attn:  Jeffrey H. Davidson (jdavidson@pszjlaw.com), Laura Davis Jones (ljones@pszjlaw.com), and Gabriel I. Glazer (gglazer@pszjlaw.com); (e) counsel to the Prepetition Priority Term Loan Agent and Prepetition Existing Term Loan Agent, Ankura Trust Company, LLC, Cahill Gordon & Reindell LLP, Attn.: Joel Moss (JMoss@cahill.com), Amit Trehan (ATrehan@cahill.com), and Sean Tierney (STierney@cahill.com); (f) counsel to the Prepetition ABL Agent, JPMorgan Chase Bank, N.A., (i) Simpson Thacher & Bartlett LLP, Attn.: Elisha D. Graff (egraff@stblaw.com); Zachary J. Weiner (zachary.weiner@stblaw.com); Sean Lee (sean.lee@stblaw.com) and (ii) Potter Anderson & Corroon LLP, Attn: L. Katherine Good (kgood@potteranderson.com) and Jeremy Ryan (jryan@potteranderson.com); and (g) any statutory committee appointed in these Chapter 11 Cases.

36.    The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearings and to any party that has filed a request for notices with this Court.

Dated: _____, 2025
       Wilmington, DE

                                        _____
                                        [__]
                                        UNITED STATES BANKRUPTCY JUDGE

## <u>Schedule 1</u>

**Initial Budget**

**Claire's Stores**
Executive Summary US

*$s in 000s*

| | Filing Date 8/8/25 | 8/15/25 | 8/22/25 | 8/29/25 | 9/5/25 | 9/12/25 | 9/19/25 | 9/26/25 | 10/3/25 | 10/10/25 | 10/17/25 | 10/24/25 | 10/31/25 | Total (8/8-10/31) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Receipts | 12,051 | 23,581 | 21,645 | 24,125 | 20,916 | 18,935 | 17,331 | 14,369 | 10,352 | 7,915 | 5,256 | 4,773 | 2,157 | 183,407 |
| **Operating Expenses** | | | | | | | | | | | | | | |
| Merch | (943) | -- | -- | (779) | (779) | (779) | (779) | (779) | -- | -- | -- | -- | -- | (4,836) |
| Freight and duty | (350) | (575) | (3,760) | (575) | (575) | -- | -- | (1,250) | -- | -- | -- | (973) | -- | (8,058) |
| Occupancy | (1,648) | (535) | (250) | (7,857) | -- | (334) | -- | (412) | (5,670) | (121) | (121) | (121) | (121) | (17,192) |
| Payroll | (447) | (230) | (8,170) | (230) | (7,000) | (230) | (5,824) | (230) | (5,269) | (230) | (4,299) | -- | (3,597) | (35,755) |
| Other opex | (1,599) | (3,347) | (2,826) | (2,723) | (1,754) | (1,450) | (2,400) | (734) | (874) | (734) | (835) | (803) | (662) | (20,742) |
| **Total Operating Expenses** | **(4,987)** | **(4,687)** | **(15,006)** | **(12,164)** | **(10,108)** | **(2,793)** | **(9,002)** | **(3,405)** | **(11,813)** | **(1,085)** | **(5,255)** | **(1,898)** | **(4,380)** | **(86,583)** |
| **Non-operating items** | **(5,828)** | **(7,895)** | **(2,641)** | **(1,984)** | **(2,951)** | **(1,733)** | **(1,821)** | **(9,226)** | **(1,856)** | **(1,736)** | **(1,831)** | **(7,120)** | **(954)** | **(47,576)** |
| **Net Cash Flow (before ABL)** | **1,236** | **10,999** | **3,998** | **9,977** | **7,857** | **14,409** | **6,508** | **1,738** | **(3,317)** | **5,094** | **(1,830)** | **(4,245)** | **(3,177)** | **49,248** |
| **Liquidity Rollforward** | | | | | | | | | | | | | | |
| Beginning Cash | $23,364 | $24,600 | $14,000 | $14,000 | $14,000 | $14,000 | $14,000 | $14,848 | $16,586 | $13,268 | $18,363 | $16,533 | $12,288 | $23,364 |
| +/- Net Cash Flow (before ABL) | 1,236 | 10,999 | 3,998 | 9,977 | 7,857 | 14,409 | 6,508 | 1,738 | (3,317) | 5,094 | (1,830) | (4,245) | (3,177) | 49,248 |
| **End Cash Prior to ABL draw (paydown)** | **$24,600** | **$35,599** | **$17,998** | **$23,977** | **$21,857** | **$28,409** | **$20,508** | **$16,586** | **$13,268** | **$18,363** | **$16,533** | **$12,288** | **$9,111** | **$72,611** |
| **ABL Rollforward** | | | | | | | | | | | | | | |
| Beginning Balance | $63,500 | $63,500 | $41,901 | $37,903 | $27,926 | $20,069 | $5,660 | $-- | $-- | $-- | $-- | $-- | $-- | $63,500 |
| +/- ABL draw (paydown) | -- | (21,599) | (3,998) | (9,977) | (7,857) | (14,409) | (5,660) | -- | -- | -- | -- | -- | -- | (63,500) |
| **Ending Balance** | **$63,500** | **$41,901** | **$37,903** | **$27,926** | **$20,069** | **$5,660** | **$--** | **$--** | **$--** | **$--** | **$--** | **$--** | **$--** | **$--** |
| **Ending Cash after ABL draw (paydown)** | **$24,600** | **$14,000** | **$14,000** | **$14,000** | **$14,000** | **$14,000** | **$14,848** | **$16,586** | **$13,268** | **$18,363** | **$16,533** | **$12,288** | **$9,111** | **$9,111** |

## Schedule 2

**Adequate Protection Milestones**

The Debtors must achieve each of the following milestones (as the same may be waived or extended from time to time with the consent of the Prepetition ABL Agent).

| Date | Milestone |
|---|---|
| Within 3 business days of the Petition Date | The Court shall have entered the Interim Order in form and substance acceptable to the Directing Cash Collateral Agent |
| Within 10 days of the Petition Date | The Debtors shall have filed a plan and disclosure statement, in each case in form and substance acceptable to the Directing Cash Collateral Agent |
| Within 30 days of the Petition Date | The Court shall have entered the Final Order in form and substance acceptable to the Directing Cash Collateral Agent |
| September 5, 2025 | The Debtors shall have delivered a report from each firm providing services in connection with the liquidations of the Collateral commenting on sales performance, and with respect to the going-out-of-business sales of inventory. In each case, such reports shall be in form and substance reasonably acceptable to the Directing Cash Collateral Agent. |
| September 30, 2025 | The Prepetition ABL Obligations shall have been paid in full and the Prepetition Letters of Credit shall have been cash collateralized in accordance with the Cash Collateral Orders. |

**Exhibit B**

**Kosturos Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DECLARATION OF WILLIAM C. KOSTUROS,**
**MANAGING DIRECTOR OF ALVAREZ & MARSAL NORTH**
**AMERICA LLC, IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY**
**OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS**
**TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO**
**PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,**
**(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

I, William C. Kosturos, hereby declare under penalty of perjury:

1.      I am a Managing Director of Alvarez & Marsal North America, LLC (together with its affiliates, "A&M"), the proposed financial advisor to the above captioned debtors and debtors in possession (collectively, the "Debtors").

2.      I submit this declaration (this "Declaration") in support of the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Cash Collateral Motion"), filed contemporaneously herewith.[2]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]    A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Chris Cramer, Chief Executive Officer, Chief*

3.      The statements in this Declaration are, except where specifically noted, based on (a) my personal knowledge, (b) information regarding the Debtors' operations and finances that I obtained from the Debtors' advisors or employees, (c) the Debtors' books, records, and relevant documents, (d) information provided to me by employees of A&M working under my supervision, and/or (e) my opinions, experience, and knowledge as a restructuring professional.  Specifically, I have been part of the A&M team, which, since May 2, 2025, has been one of the principal restructuring advisors to the Debtors.  In that capacity, I work closely with the Debtors' management and other professionals with respect to the Debtors' restructuring efforts, including assisting the Debtors in preparing cash flow projections, budgets, and other financial information and I have been directly involved in the matters leading up to the Debtors' chapter 11 filings.  I am over the age of 18 years and authorized to submit this Declaration on behalf of the Debtors.  If called upon to testify, I could and would testify competently to the facts set forth herein.

## Background and Qualifications

4.      A&M is a preeminent restructuring consulting firm with extensive experience and an excellent reputation for providing high-quality, specialized management and restructuring advisory services to debtors and distressed companies.  A&M provides a wide range of turnaround advisory services targeted at stabilizing and improving a company's financial position, including: (a) developing or validating forecasts, business plans, and related assessments of strategic position; (b) monitoring and managing cash, cash flow, and supplier relationships; (c) assessing and recommending cost reduction strategies; and (d) designing and negotiating financial restructuring

---

*Operating Officer, and Chief Financial Officer of Claire's Holdings LLC and Certain of Its Affiliates In Support of the Debtors' Chapter 11 Petitions and First Day Pleadings*, filed contemporaneously herewith.  Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Cash Collateral Motion or the First Day Declaration, as applicable.

packages.  A&M is known for its ability to work alongside company management and key constituents during chapter 11 restructurings to develop a feasible and executable plan of reorganization.

5.      I have more than 30 years of distressed company advisory experience.  I have been involved in all aspects of numerous restructurings and have acted as, among other roles, Chief Restructuring Officer, interim Chief Executive Officer, and Chief Financial Officer.  My experience includes developing and negotiating solutions to complex capital structure issues, formulating and evaluating strategic business plans, developing and implementing turnaround strategies, and preparing forecast models and short- and long-term cash plans.  My notable engagements include:  SVB Financial Group; AIG Financial Products Corp.; Ascena Retail Group, Bed, Bath & Beyond, Toys "R" Us, Washington Mutual, Movie Gallery, Pacific Gas & Electric; Levi Strauss; Sunshine Biscuits; Hexcel Corporation; Unisil Corp.; Clothestime; and Spreckels Industries.  I graduated with a bachelor's degree in accounting from the University of San Francisco.

6.      The Debtors engaged A&M on May 2, 2025, to serve as their financial advisor in connection with any potential restructuring transaction, sale transaction, or capital raising transaction, including the Debtors and their non-Debtor operations.  I understand that the Debtors chose A&M for these roles because of our expertise on issues relating to financially distressed companies and our extensive experience acting as an advisor in both in-court and out-of-court restructurings of companies of all sizes across a wide array of industries.  A&M and its professionals have considerable experience advising debtors in chapter 11 cases and have been employed as an estate compensated professional in various capacities in numerous chapter 11 cases in this and other districts.  From the outset of A&M's retention, I have worked closely with the

Debtors' management team and other advisors to evaluate the Debtors' liquidity and cash needs in the event of a chapter 11 filing.

**The Debtors Have an Immediate Need for the Use of Cash Collateral**

7.    The Debtors do not have unfettered access to their cash.  It is my understanding that all of the Debtors' available cash constitutes the Prepetition Secured Parties' Cash Collateral, and the Prepetition Secured Parties have security interests in substantially all of the Debtors' assets, including any proceeds generated from the Debtors' assets and operations.  As such, the Debtors do not have sufficient unencumbered cash to operate their business, let alone the added costs of administering these chapter 11 cases.  The Debtors' immediate access to Cash Collateral is critical to continue operating, to fund the administration of these chapter 11 cases, and to preserve and maximize the value of their estates.  Absent immediate access to Cash Collateral, the Debtors and their estates, and by extension, their stakeholders, will be immediately and irreparably harmed.

8.    Against that backdrop, over the past weeks, the Debtors negotiated with the Prepetition Secured Parties to develop a budget, adequate protection package, and case timeline that would induce the Prepetition Secured Parties' to consent to the Debtors' use of their Cash Collateral.  The Debtors and the Prepetition Secured Parties agreed that consensual use of Cash Collateral—not a new debtor-in-possession financing facility—was appropriate in light of the Debtors' circumstances and anticipated cadence of the chapter 11 cases.  The agreed upon terms regarding the consensual use of Cash Collateral are set forth in the proposed Interim Order.

9.    I, with the assistance of my team and the Debtor's advisors, oversaw the development of a 13-week cash flow forecast (the "Initial Budget") for the use of Cash Collateral during these chapter 11 cases.  The Initial Budget contains line items for cash flows anticipated to be received and disbursed during the time period for which the Initial Budget is prepared, and includes all reasonable, necessary, and foreseeable expenses that the Debtors expect to incur as a

4

result of the operation of their business during such time, as well as the projected costs of these chapter 11 cases. Based on my experience and extensive discussions with the Debtors' management team and advisors, I believe the Initial Budget presents a reasonable estimate of the Debtors' cash sources and needs during these chapter 11 cases.

10.     Based on the Initial Budget, the Debtors' project that, subject to their continued access to Cash Collateral, the Debtors will have sufficient cash on hand to continue operations as they seek to pursue a value-maximizing monetization of their assets. Without immediate access to Cash Collateral as provided for in the Cash Collateral Orders, the Debtors will be unable to fund the administration of these chapter 11 cases. Accordingly, I believe the Debtors' access to the Cash Collateral is necessary to avoid immediate and irreparable harm for the benefit of all of the Debtors' stakeholders.

11.     It is my understanding that the Debtors propose to provide the Prepetition Secured Parties with an adequate protection package that includes, among other things, adequate protection liens, superpriority administrative expense claims, postpetition interest, financial and operational reporting obligations, compliance with certain milestones, and the payment of certain fees and expenses, as applicable. I believe that each form of adequate protection is appropriate under the circumstances. I also believe that the terms of the adequate protection provisions reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and will contribute to adequately protecting the Prepetition Secured Parties against any diminution in value of their Cash Collateral. Moreover, absent approval of the adequate protection package, the Prepetition Secured Parties would not consent to the use of their Cash Collateral.

12.     Because the Debtors' access to Cash Collateral is fundamental to the success of these chapter 11 cases, I believe the relief requested in the Cash Collateral Motion is necessary

and appropriate to avoid immediate and irreparable harm to the Debtors' estates and is in the best interests of the Debtors, their creditors, and all other stakeholders.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  August 6, 2025

*/s/  William C. Kosturos*

Name: William C. Kosturos

Title:  Managing Director

Alvarez & Marsal North America, LLC

### File a First Day Motion:

25-11454-BLS Claire's Holdings LLC

| | | |
|---|---|---|
| Type: bk | Chapter: 11 v | Office: 1 (Delaware) |
| Assets: y | Judge: BLS | Case Flag: PlnDue, DsclsDue, MEGA, STANDOrder |

**U.S. Bankruptcy Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was received from Zachary I Shapiro entered on 8/6/2025 at 12:09 PM EDT and filed on 8/6/2025

**Case Name:** Claire's Holdings LLC
**Case Number:** 25-11454-BLS
**Document Number:** 26

**Docket Text:**
Motion to Approve Use of Cash Collateral *(Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief)* Filed By Claire's Holdings LLC (Shapiro, Zachary)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** Claire's - Cash Collateral Motion.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983404418 [Date=8/6/2025] [FileNumber=19359612-0]
[a3d3457831ed161c1acef4e313f0917b9cae0b21415aa1697c2cb465d9a3b53dee83
6d6c479f39815f7460c93e7c94c8b851e513341e14f50374077f3f788e43]]

**25-11454-BLS Notice will be electronically mailed to:**

L. Katherine Good on behalf of Interested Party JPMorgan Chase Bank, N.A.
kgood@potteranderson.com, leastburn@potteranderson.com;bankruptcy@potteranderson.com;kmccloskey@potteranderson;tmistretta@potteranderson.com

Elisha D. Graff on behalf of Interested Party JPMorgan Chase Bank, N.A.
egraff@stblaw.com

Jeffrey Kurtzman on behalf of Creditor PREIT Services, LLC
kurtzman@kurtzmansteady.com

Kristen N. Pate on behalf of Creditor Brookfield Properties Retail Inc.
bk@bpretail.com

Reliable Companies
gmatthews@reliable-co.com

Sameen Rizvi on behalf of Interested Party JPMorgan Chase Bank, N.A.
srizvi@potteranderson.com, leastburn@potteranderson.com;bankruptcy@potteranderson.com;tmistretta@potteranderson.com;kmccloskey@potteranderson.com

Jeremy W. Ryan on behalf of Interested Party JPMorgan Chase Bank, N.A.
jryan@potteranderson.com,
bankruptcy@potteranderson.com;leastburn@potteranderson.com;kmccloskey@potteranderson.com;tmistretta@potteranderson.com;mromano@potteranderson.com

Zachary I Shapiro on behalf of Debtor Claire's Holdings LLC
shapiro@rlf.com, rbgroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com;rebecca--speaker-6328@ecf.pacerpro.com

Michelle E. Shriro on behalf of Creditor Bridge33 Capital LLC
mshriro@singerlevick.com, scotton@singerlevick.com

Ethan H. Sulik on behalf of Interested Party JPMorgan Chase Bank, N.A.
esulik@potteranderson.com, kmccloskey@potteranderson.com

U.S. Trustee
USTPRegion03.WL.ECF@USDOJ.GOV

**25-11454-BLS Notice will not be electronically mailed to:**

L. Katherine Good on behalf of Interested Party JPMorgan Chase Bank, N.A.
Potter Anderson & Corroon LLP
1313 N. Market Street
6th Floor
Wilmington, DE 19801

Sean L. Lee on behalf of Interested Party JPMorgan Chase Bank, N.A.